[Crim. No. 594. In Bank.—August 23, 1900.]

## THE PEOPLE, Respondent, v. WILLIAM SULLIVAN, Appellant.

CRIMINAL LAW—HOMICIDE—CIRCUMSTANTIAL EVIDENCE—DIFFERENCE IN WEIGHT OF BULLET.—Where the circumstantial evidence that the defendant committed the crime of murder with which he was charged was such that the jury were justified in finding that the bullet which killed the deceased was shot from a rifle borrowed by the defendant, the mere fact that the distorted bullet found in the body weighed four grains less than an intact model bullet shot from the same rifle, the loss in the weight of which was accounted for in the testimony of a gunsmith, cannot be ground for setting aside the verdict of the jury whose province it is to weigh the evidence and decide upon the credibility of witnesses.

ID.—TRACING OF GUN—DISPOSITION BY DEFENDANT—FLIGHT.—It was competent for the prosecution to trace the gun borrowed by the defendant from the time it came into his hands until finally located in the possession of the party producing it, and to prove the disposition made of it by the defendant in a distant town, in connection with his departure from the neighborhood immediately after the homicide, and then absenting himself from the state, as a circumstance tending to show flight and guilty knowledge.

ID.—ADMISSIBILITY OF GUN.—Where the gun was fully traced and identified, and it was shown that both before and after borrowing it the defendant had threatened to kill the deceased, and was seen going with it shortly before the homicide toward the place where the homicide was committed, the gun is admissible in evidence.

ID.—IDENTIFICATION OF ACQUAINTANCE—HARMLESS RULING.—The admission of the testimony of a witness as to his knowledge that an acquaintance was a one-armed man, in response to a question objected to as to how many arms such person had, probably asked for the purpose of identification, or to test the acquaintance of the witness, is harmless, where it is not shown and cannot be seen how the answer to the question could prejudice the defendant.

ID.—MISCONDUCT OF JURY—INTOXICATION OF JUROR—CONFLICTING EVIDENCE—OBSERVATION BY JUDGE—FINDING.— Where a new trial was sought for misconduct of the jury, in that one of the jurors became intoxicated near the close of the trial during a recess, so that he was too drunk to understand the instructions and properly to consider the case, and the evidence was conflicting,

and the trial judge, having the best opportunity to observe the condition of the juror, found that he was not incapacitated, his finding will not be disturbed upon appeal.

Id.—Evidence of Misconduct—Exclusion of Oral Testimony—Affidavits.—The exclusion of oral testimony of witnesses subpoenaed by the defendant in support of the charge of misconduct is not prejudicial, where the affidavits of each of the witnesses was presented, if there is no showing that any one of them had refused to testify fully by affidavit to all the material facts within his knowledge. The law allows no difference between affidavits or depositions or oral testimony when offered in support of motions.

Id.—Cross-examination of Affiants—Discretion of Court.—It is in the discretion of the court to allow or to refuse to allow the cross-examination of witnesses who testify upon motion for new trial by affidavits or counter-affidavits on the question of misconduct.

APPEAL from a judgment of the Superior Court of Tuolumne County and from an order denying a new trial.    G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

J. P. O'Brien, for Appellant.

Tirey L. Ford, Attorney General, and C. N. Post, Assistant Attorney General, for Respondent.

VAN DYKE, J.—The defendant was indicted by the grand jury of the county of Tuolumne for the crime of murder, in the killing of one William Spencer Gilliard, and was tried and convicted of murder in the first degree.    The appeal is taken from the judgment entered upon said verdict and from the order overruling defendant's motion for a new trial.

The appellant presents and urges three grounds of error for a reversal: 1. That the evidence is insufficient to sustain the verdict; 2. Rulings of the court on the admission of evidence; 3. Misconduct of the jury.

1. The evidence is circumstantial.    The following is a synopsis of the same: The deceased, Gilliard, in April, 1897, was employed as a watchman on the night shift at the Jumper mine in Tuolumne county, and the defendant at the same time was employed at the same mine as a miner.    On the 16th of April, 1897, Kelly, the foreman of the mine, discharged the defend-

ant from employ at the mine, between 6 and 7 o'clock in the evening. The defendant blamed the deceased, Gilliard, for his discharge, and made threats regarding him. The deceased went to work on the night shift at about 7 o'clock. The defendant on the night of his discharge remarked that he, the deceased, might work that shift, but that he would not work the next. Immediately after his discharge the defendant went home to his boarding-house and told his landlady that he had been discharged and that he would "fix Mr. Gilliard." On the afternoon of the killing the defendant said in the presence of two witnesses that Gilliard should "bite the dust," and that he would kill Gilliard. On the evening of the killing, between 7 and 9 o'clock, defendant borrowed a 44-caliber '73 model Winchester rifle from E. S. Schaffner, telling Schaffner that he was taking a few days lay-off and was going prospecting next day. On that same night he went to the room occupied by himself and one Corcoran before 9 o'clock, and had with him a Winchester rifle which he loaded then and there, and while in Corcoran's room he berated both Boone and Gilliard, and said he would make them both "bite the dust" before morning. He said he would kill them both for getting him discharged. About half-past 9 o'clock on the same night defendant was seen by one Frank Hill going in the direction of the Jumper mine and carrying a rifle at the time. It took ten or fifteen minutes to walk from where Hill was down to the Jumper mine. On the evening of the 17th of April, the next evening after the defendant was discharged, the deceased, together with F. W. Greiner and E. G. Boone, was sitting in the building at the shaft of the Jumper mine between half-past 9 and a quarter to 10 o'clock, when a gunshot was fired through a crack in the building and a bullet struck deceased in the back, on the right side, from the effects of which he died next day. Defendant disappeared immediately from the neighborhood, and was not seen there again until brought back under arrest from Silver City, New Mexico, in April, 1899, two years after the homicide. Soon after the homicide he was seen at Peoria Flat, some eleven miles by road from the Jumper mine, where he tried to sell the rifle he had borrowed to one John Darrow. The rifle was subsequently recovered by constable Leland from

an old man named McCullum or McLean, who lived at Peoria Flat, with whom the defendant had left it with a request that it be returned to Mr. Schaffner, from whom it had been borrowed.

Appellant's counsel devotes considerable space in his argument to the fact that the ball found in the body of the deceased was of less weight than that of a 44-caliber '73 model Winchester rifle, the one borrowed by the defendant. Mr. Rowell, a gunsmith, after examining the ball found in the body, testified: "Bullets of that kind are determined by weight. They are given in all the catalogues of cartridges such a weight bullet for such cartridges. A ball distorted you can't tell by the size; the only way is to tell by the heft, and a portion of that lead is gone, because it can't penetrate any substance and be distorted as much as that is without losing some weight. . . . . This is four grains lighter than a ball intact, 44-'73 model Winchester. From the battered condition of that ball my best opinion is that it is a 44-caliber. . . . . I compared this with an intact bullet, 44-caliber, by weighing that, and I found that this exhibit here is four grains lighter. I can give you the weight of the ball offered in evidence. It is one hundred and ninety-three grains. The bullet of the model of '73 Winchester rifle is four grains heavier than this one." Notwithstanding the slight difference in weight in the bullet, under the circumstances it cannot be said that the jury were not justified in finding that it was the one shot from the gun borrowed by defendant, nor can it be said that the chain of circumstantial evidence was not sufficient to support the verdict of the jury. "It is the peculiar province of the jury to weigh the evidence and decide upon the credibility of witnesses; and it is not our practice to disturb verdicts on this ground unless there is either a total deficiency in the evidence or it preponderates so greatly against the verdict as to render it clear that the jury must have been under the influence of passion or prejudice." (*People v. Manning*, 48 Cal. 335. See, also, *People v. Mayes*, 66 Cal. 597[1]; *People v. Ah Jake*, 91 Cal. 98; *People v. Freeman*, 92 Cal. 359.)

2. Objection was made to the question as to how many arms a Mr. Coffin had, and the answer, over the objection, was that

---

[1] 56 Am. Rep. 126.

he was a one-armed man. The question was probably asked for the purpose of identifying Mr. Coffin, or testing the witness in reference to his acquaintance with Coffin. At any rate it is not shown, nor can it be seen, how the answer to the question could prejudice the defendant. The question, "Who did return the gun to you," was properly permitted. It was competent for the prosecution to trace the gun from the time it came into the hands of the defendant until finally located in the possession of the party producing it at the trial. It was proper also to show what disposition defendant made of the gun after the homicide, as a circumstance tending to show flight and guilty knowledge; and it was also proper to admit the gun in evidence. The case of *People v. Hill*, 123 Cal. 571, relied upon by appellant's counsel, is altogether different from this. In that case a large club was admitted in evidence, and this court in its opinion said: "There was no evidence identifying the stick as the one with which the defendant struck the deceased, or in any way connecting the defendant with it." Here it was shown the defendant borrowed the gun in question, and with this rifle in his hand he told his room-mate that he would kill the deceased, and he was seen going toward the place where the homicide was committed, with this gun. The court properly overruled the objections of defendant to questions relative to identifying the rifle.

3. The alleged misconduct of the jury was the drinking of intoxicating liquors by one of the jurors during a recess of the court just before the close of the trial, so that at the time the charge of the court was delivered he was too drunk to understand the instructions, and continued too drunk to properly consider the case. Conceding that the misconduct alleged would have been sufficient to vitiate the verdict if the charges had been substantiated, it is a sufficient answer to this assignment of error to say that the evidence of intoxication was conflicting, and the trial judge, who himself had the best opportunity of observing the condition of the juror, having found that he was not incapacitated, this court cannot disturb the finding.

But it is further contended that the trial court erred in excluding evidence offered by appellant to prove his charge of

misconduct. As regards this point the facts are that when the defendant was arraigned for sentence and presented his motion for a new trial he offered in support of his motion his own affidavit and those of two other persons, to the effect that Mackey—one of the jurors—was drinking in a saloon just before the close of the trial and was drunk while the judge was delivering his charge. He also asked leave to introduce the oral testimony of some witnesses who, he stated, were there present in obedience to subpoena. Upon objection of the district attorney to the taking of oral testimony in support of the motion, the court ruled that it would not hear oral evidence and that the showing must be made by affidavit, basing its ruling upon the authority of *People v. Tucker*, 117 Cal. 229. The defendant then asked a continuance of the hearing for three or four days to enable him to procure the affidavits of the witnesses who had been subpoenaed. This application was denied, but counsel for defendant was allowed about three hours to procure the affidavits and in the meantime the proceeding was suspended. When the court reconvened, at the expiration of the time allowed, the defendant offered three additional affidavits in support of his charge of misconduct, and the affidavit of his counsel to the effect that he could not secure the testimony concerning the intoxication of the juror as effectively by affidavits as he could and would by the oral testimony of said witnesses. There was no allegation that any of his witnesses had refused to make affidavit, and his language implies the contrary. It would appear, then, that in spite of the adverse ruling of the court he was able to adduce all of his testimony on the subject of intoxication, and that his only ground of complaint is that testimony by affidavit is not so effective as oral testimony. This may possibly be so, but the law recognizes no difference between affidavits or depositions and oral testimony when offered in support of motions, and unless it should be made to appear that a witness had refused to testify fully by affidavit to all the material facts within his knowledge (and nothing of the sort appears in this case), it could not be said that the moving party had suffered any prejudice by the refusal to hear oral testimony. This conclusion renders it unnecessary to decide whether it would be held

an abuse of discretion to refuse to hear oral evidence in support of a charge of misconduct of jurors when it appeared that the affidavits of witnesses could not be procured. It is, perhaps, true, as held in *People v. Tucker, supra,* that it is within the discretion of the court to require all evidence in support of the motion for a new trial in criminal causes to be put in the form of affidavits (or depositions), though there is no provision in the Penal Code for the use of affidavits except when the ground of the motion is newly discovered evidence. (Pol. Code, sec. 1181.) If the matter is governed by the rules of evidence in civil actions, which, with certain exceptions, are made applicable in criminal actions (Pol. Code, sec. 1102), then sections 2002 et seq. of the Code of Civil Procedure apply, and it would seem that the only result of refusing to hear the oral evidence of a witness who will not make his affidavit would be to give the defendant the right to take his disposition under subdivision 5 of section 2021 of the Code of Civil Procedure. But, as above stated, it is not necessary to decide upon this matter in the present case, and the foregoing remarks are merely intended to direct attention to the possible danger or inconvenience of refusing under all circumstances to hear oral evidence in support of a charge of misconduct of jurors.

Error is also assigned upon a ruling of the superior court refusing to allow a cross-examination of the witnesses who made counter-affidavits on the question of misconduct. This, we suppose, is a matter resting in the discretion of the trial court, and nothing appears in the present case to indicate an abuse of discretion.

The judgment and order appealed from are affirmed.

Harrison, J., Temple, J., McFarland, J., Garoutte, J., and Beatty, C. J., concurred.

Rehearing denied.