[No. 88.   Third Appellate District.—May 29, 1905.]

## In re Application of HARRY BUNKERS for Habeas Corpus.

CRIMINAL LAW—BRIBERY OF MEMBER OF LEGISLATURE—CONSTITUTIONALITY OF PENAL PROVISION—PUNISHMENT—DISFRANCHISEMENT.— Section 86 of the Penal Code, as re-enacted April 6, 1880, punishing legislative bribery as a felony, including disfranchisement as part of the punishment, is a revised and independent act, which is

not subject to section 26 of article IV of the constitution. The original section was not repealed by section 35 of article IV of the constitution; and the power of the legislature to punish legislative bribery by section 86 of the Penal Code as re-enacted was not withdrawn by that section of the constitution, and the legislature properly included the additional punishment of disfranchisement established by the constitution.

ID.—POWER OF LEGISLATURE—CONCLUSIVE PRESUMPTION.—An act of the legislature is conclusively presumed to be within its powers unless expressly prohibited by the state or federal constitution.

ID.—INVESTIGATION BEFORE SENATE COMMITTEE—BUILDING AND LOAN CORPORATIONS—CORRUPT RECEIPT OF BRIBE.—The legislature has power under section 1 of article XII of the constitution and section 383 of the Civil Code to investigate the affairs of all corporations in this state; and a member of a senate committee appointed for the purpose of investigating the affairs of building and loan corporations is charged with a duty in his official capacity as a member of the senate, and if he accepts a bribe to prevent such investigation and to cast his official vote against it, he is guilty of bribery as a member of the legislature.

ID.—SUFFICIENCY OF INDICTMENT—HABEAS CORPUS.—Where the indictment sufficiently charges bribery as defined by subdivision 6 of section 7 and by section 86 of the Penal Code, and states the offense with sufficient particularity to give the court jurisdiction of the charge, the party charged cannot for any alleged defect in the statement be discharged upon writ of *habeas corpus*.

ID.—JURISDICTION OF COURT.—The superior court of Sacramento County has jurisdiction of the offense of bribery committed therein by a member of the legislature.

APPLICATION for Writ of Habeas Corpus to the Sheriff of Sacramento County for discharge under sentence after conviction under indictment in the Superior Court. E. C. Hart, Judge.

The facts are stated in the opinion of the court.

H. V. Morehouse, and H. L. Partridge, for Petitioner.

A. M. Seymour, District Attorney, for Respondent.

CHIPMAN, P. J.—Application for writ of *habeas corpus*. Petitioner was indicted for the crime of bribery, convicted by a jury and sentenced by the court to imprisonment in the state prison at San Quentin for the term of five years, and is now in the custody of the sheriff of Sacramento County by

virtue of the judgment of conviction and an order of commitment indorsed thereon.

The indictment is as follows:—

"The said Harry Bunkers, on the —— day of January, A. D. 1905, at the said county of Sacramento, in the said state of California, and before the finding of this indictment, the said Harry Bunkers being then and there a member of one of the houses, to wit: the senate, composing the legislature of the state of California, to wit: the senator of the state of California in and for the eighteenth senatorial district, and being then and there a member of a regularly constituted committee of the said senate of the state of California, to wit: the committee on commissions and retrenchment, and the said legislature of the state of California being then and there duly and regularly convened in its thirty-sixth session, did then and there willfully, unlawfully, feloniously and corruptly ask and receive from one Joseph Jordan a bribe, to wit: the sum of three hundred dollars in lawful money of the United States, upon the agreement and understanding that his, said Harry Bunkers', official vote, opinion, judgment and action as such senator and member of said house of said legislature, should be influenced thereby and should be given in a particular manner and upon a particular side of a question and matter upon which he might be required to act in his official capacity, to wit: the said bribe, to wit: the sum of three hundred dollars lawful money of the United States, was so given by said Joseph Jordan to the said Harry Bunkers, and was so received by the said Harry Bunkers from said Joseph Jordan upon the understanding and agreement that he, said Harry Bunkers, as such member of one of the houses of the legislature of the state of California, to wit: the senate, and as such member of said committee on commissions and retrenchment, would give his official vote to secure the Renters' Loan and Trust Company, a corporation, and the Phœnix Savings, Building and Loan Association, a corporation, immunity from investigation of their affairs and business by said senator of the state of California, and by said committee on commissions and retrenchment, and that he, said Harry Bunkers, would give his official vote as such senator and such member of said committee as aforesaid to secure the said Renters' Loan and Trust Company,

a corporation, and the said Phœnix Savings, Building and Loan Association, a corporation, immunity from any unfavorable comment or report by the said senate of the state of California, and by the said committee of the senate of the state of California, to wit: the committee on commissions and retrenchment, there being then and there pending before said committee on commissions and retrenchment an investigation of the affairs and business of said corporations, contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the people of the state of California.          A. M. Seymour,

"District attorney of Sacramento County,
in the state of California."

The points urged by defendant at the argument were: 1. That section 86 of the Penal Code, under which the indictment was drawn, was repealed by force of section 35 of article IV of the state constitution; 2. That the legislature, and necessarily this committee, has no power to investigate the business of a private corporation, and that the act for the doing of which petitioner was charged was not an act within his official duty, and hence there could be no bribery involved; 3. Even if the legislature had the power to make such investigation, still the indictment fails to state matters of substance required by law and hence charges no offense; and 4. That the writ of *habeas corpus* will lie because the court before which the cause was tried was without jurisdiction.

1. The argument of counsel, at the hearing of the return, was based on the assumption that section 86 was enacted under the old constitution. The contention was, that this section as it then stood was inconsistent with section 35 of article IV of the present constitution, and therefore was repealed by virtue of section 1 of article XXII; and that it does not help the matter to say that section 86 has been amended since the adoption of the new constitution. Upon this latter point the claim is, that the old section 86 being repealed, because of its being inconsistent with section 35 of article IV, it follows that there was nothing to amend, and hence the amendatory act is void.

Section 24 of article IV of the constitution provides, among other things, as follows: "No law shall be revised or amended

by reference to its title; but in such case the act revised or section amended shall be re-enacted and published at length as revised or amended." Section 86 of the Penal Code, under which this indictment was found, was passed April 6, 1880, subsequent to the adoption of the constitution. (Amendments to Penal Code, 1880, p. 7.)

It was said in *Pennie* v. *Reis,* 80 Cal. 266, [22 Pac. 176], that the provision of section 24 of article IV does not apply to an independent act; and in *Donlon* v. *Jewett,* 88 Cal. 530, [26 Pac. 370], it was held that a revised or amended act must be construed as a new and original piece of legislation.

We have examined with much care section 86 of the Penal Code and section 35 of article IV of the constitution, and have not been unmindful in doing so of the rules of interpretation relied on by petitioner; and our opinion is that the constitution did not work the repeal of the code section. We are therefore to be guided by the rule laid down in *Donlon* v. *Jewett* rather than the rule in *Pennie* v. *Reis.* The sole question then is, Was the power of the legislature to legislate upon the subject of legislative bribery withdrawn by section 35 of article IV?

The constitution does not either by its terms or by necessary implication forbid the legislature to pass such a statute as is found in section 86 of the Penal Code. The language of the constitution is: "Any member of the legislature, who shall be influenced in his vote or action upon any matter pending before the legislature by any reward, or promise of future reward, shall be deemed guilty of a felony, and upon conviction thereof, *in addition to such punishment as may be provided by law* shall be disfranchised and forever disqualified from holding any office or public trust."

In declaring the acts therein described to be a felony, and upon conviction thereof that the guilty party "shall be disfranchised and forever disqualified from holding any office or public trust," the provision is mandatory and self-executing, and as a penalty for the acts such guilty party must be so adjudged to suffer; but this is not the sole penalty, but is what the constitution declares a penalty *"in addition to such punishment as may be provided by law."* In re-enacting section 86 the legislature very properly, in addition to imposing imprisonment on its own initiative, as the con-

I Cal. App.—5

stitution clearly implies it may do, included the constitutional punishment, in order, probably, that the entire penalty to be inflicted might appear in a single section of the Penal Code. It will be observed that the crime of lobbying denounced by this same section 35 of article IV is to be punished as the legislature may provide. It is not possible by any reasonable interpretation of these provisions of the constitution to say that the framers of that instrument intended it to embrace all needed legislation on the subject of legislative bribery and to forbid further legislation on that subject.

It is hardly necessary to point out the distinction between the constitutional powers of the United States and the like powers of the states. Suffice it to state briefly that the latter possess general powers of legislation while the former possesses such only as are granted. A state law is conclusively presumed to be within the powers of the legislature unless in the constitution of the United States or of the state we are unable to discover that it is prohibited. (Cooley on Constitutional Limitations, 7th ed., p. 126; *Ex parte Mabry*, 5 Tex. App. 93.)

Petitioner's contention, therefore, that there is now no law punishing legislative bribery except it be found in the provisions of the constitution, cannot be maintained.

2. It is further claimed that petitioner was not charged with any official duty in respect of the investigation mentioned in the indictment, and therefore bribery cannot be predicated of his alleged acts.

Stripped of its technical formalities, the indictment shows that petitioner was a member of the senate then in session, and was also a member of a regularly constituted senate committee, before which an investigation of the affairs and business of certain building and loan corporations of this state was then pending, and that he corruptly asked and received a bribe of three hundred dollars upon the agreement and understanding that his "official vote, opinion, judgment and action as such senator and member of said house of said legislature, should be influenced thereby and should be given in a particular manner upon a particular side of a question and matter upon which he might be required to act in his official capacity," and that such bribe was received with the

further understanding that as such senator and as a member of this committee he would give his official vote to secure these corporations immunity from investigation of their affairs by the senate and the committee and also give his official vote to secure them immunity from any unfavorable comment or report by the said committee.

The point made by petitioner was strongly urged at the argument, and reliance was especially placed upon the *Matter of Pacific Railway Commission*, 32 Fed. 241, 12 Saw. 559, and *Kilbourn* v. *Thompson*, 103 U. S. 168, and also section 1 of article III of the constitution of California.

Respondent cities numerous cases holding that the legislature has the power to investigate the business and affairs of corporations; and that whether or not the legislature had such power is immaterial, as the matter of an investigation was pending and official action was called for. (Citing, as to the power, *Burnham* v. *Morrisey*, 14 Gray, 226;[1] *Crease* v. *Babcock*, 23 Pick. 344;[2] *People* v. *Keeler*, 99 N. Y. 463,[3] [2 N. E. 615] ; *Ex parte McCarthy*, 29 Cal. 395; *Market-St. Ry. Co.* v. *Hellman*, 109 Cal. 571, [42 Pac. 225] ; *McGowan* v. *McDonald*, 111 Cal. 57,[4] [43 Pac. 418] ; Const. 1879, art. XII, sec. 1; Civ. Code, sec. 383.)

As to the immateriality of the question of power, the investigation being in fact pending, the following citations are given: *State* v. *Potts*, 78 Iowa, 656, [43 N. W. 534] ; *Glover* v. *State*, 109 Ind. 391, [10 N. E. 282] ; *Commonwealth* v. *Lapham*, 156 Mass. 480, [31 N. E. 638] ; *State* v. *Ellis*, 33 N. J. Law, 102 ;[5] *State* v. *Lehman*, 182 Mo. 424,[6] [81 S. W. 1118] ; Pen. Code, sec. 86.

Section 1 of article XII of the constitution provides that corporations may be formed under general laws, and declares that "All laws now in force in this state concerning corporations, and all laws that may be hereafter passed pursuant to this section, may be altered from time to time or repealed."

Section 383 of the Civil Code, passed March 21, 1872, provides as follows: "The legislature, or either branch thereof, may examine into the affairs and condition of any corporation in this state at all times; and, for that purpose, any com-

---

[1] 74 Am. Dec. 676.
[2] 34 Am. Dec. 61.
[3] 52 Am. Rep. 49.
[4] 52 Am. St. Rep. 149.
[5] 97 Am. Dec. 707, and note.
[6] 103 Am. St. Rep. 670.

mittee appointed by the legislature, or either branch thereof, may administer all necessary oaths to the directors, officers, and stockholders of such corporation, and may examine them on oath in relation to the affairs and condition thereof; and may examine the safes, books, papers, and documents belonging to such corporation, or pertaining to its affairs and condition, and compel the production of keys, books, papers, and documents by summary process, to be issued on application to any court of record or any judge thereof, under such rules and regulations as the court may prescribe.''

What the limit is of the powers which may be exercised under these provisions of the constitution and the statute is not necessary now to prescribe. But whatever that limit may be, we are clearly of the opinion that it was not reached by the committee of the legislature in entering upon an investigation of the affairs of the corporation mentioned in the indictment, which investigation we must presume was either within its regular and ordinary duties under standing rules of the senate or was specially devolved upon it by that body. If the legislature cannot exercise this power through a committee, it had not the power to create a board of commissioners of loan associations upon which, by the act of March 23, 1893 (Stats. 1893, p. 299), even greater powers are conferred than were alleged to have been assumed by the legislative committee of which petitioner was a member. Similar powers also are being exercised by the bank commissioners and other bodies created by the legislature. The argument which would destroy the power of the legislature, through its committees, to inquire into the affairs of corporations, with a view to correct corporate abuses, would also destroy the power of the commission created by it for that purpose. But such exercise of legislative power has been long exercised and universally acquiesced in, and is, we think, unquestionably intrenched in our system of government.

The learned trial judge, whose opinion is before us, well observed: ''Corporations of the character of those under investigation by the committee on commissions and retrenchment of the senate are creatures of the law. While they are not, under our constitution, created by direct act of legislation, they are, nevertheless, just as much creatures of the legislative power as they were previous to the adoption of our

present organic law. Our legislators necessarily gather wisdom evidenced in our system of laws from experience, and it is therefore one of the duties of citizens elected to the legislative branch of the government to gather all information, facts, and data necessary to a proper performance of their duty, and thus place themselves in a position where they can give the state as nearly a perfect code of laws as human ingenuity is capable of. The legislature has passed general laws by virtue of which corporations of all kinds and classes may come into existence. It is true that if these corporations violate the laws by which they are formed and organized, and thereby deprive citizens of their rights, the remedy would be an appeal to the judicial arm of the government. But where there are manifest defects in the general laws authorizing the establishment of such corporations it is not only proper, but absolutely the duty of the legislative department to gather information upon the subject in all legitimate ways to enable it to make such reforms in those general laws as will prevent, or at least minimize, the wrongs which flow from such defects. . . . This may be called a visitorial or supervisorial power, but, whatever its proper designation, it is, nevertheless, a power that exists, and one which ought to exist, and without the existence of which the public would have no adequate protection from corporations which, legally established, are managed so as to perpetrate fraud upon the rights of the people with whom they do business.''

Similar and equally pertinent views will be found expressed in *People* v. *Keeler*, 99 N. Y. 463,[1] [2 N. E. 615], and other cases above cited by the district attorney.

3. It is contended that the indictment ''is defective in some matter of substance required by law,'' and petitioner should be discharged by virtue of subdivision 3 of section 1487 of the Penal Code. But it also provides that the defect referred to must have the effect of ''rendering such process void,''—i. e. the indictment in this case. (Citing *People* v. *Ward*, 110 Cal. 368, [42 Pac. 894] ; *People* v. *Dunlap*, 113 Cal. 72, [45 Pac. 183], and some other cases.) *People* v. *Ward* was a case of bribery, and the indictment charged that defendant did willfully, feloniously, etc., ''give a bribe'' to a certain member of the board of supervisors, with intent to corruptly

1 52 Am. Rep. 49.

influence him in a certain matter. The court said that this was not an averment of any act of defendant sufficient to bring his alleged conduct within the legal meaning of bribery as defined by subdivision 6 of section 7 of the Penal Code. Meeting the contention of respondent, the people, that it was sufficient to allege an offense in the language of the statute, the court said: "The offense charged in the case at bar is not *alleged* in the language of the statute in the indictment under review. It does not allege 'the acts and facts which the legislature has said shall constitute the offense.' The material acts or facts constituting the legislative definition of bribery are the giving to a public officer something 'of value or advantage, present or prospective,' or giving 'any promise' or entering into any 'undertaking' to give something of value or advantage. There is no averment that appellant gave the supervisor anything of value, or of advantage, or that he gave anything at all; or that the thing was of present or prospective advantage; or that it was a promise to do something, or an undertaking of some kind which was or would be, beneficial to the supervisor." In the indictment before us the district attorney seems to have been careful to meet the requirements as set forth in *People* v. *Ward.* It was further said in that case, speaking of the rule of pleading where the pleader follows the statute: "It means simply this: that when the statute defines or describes the acts which shall constitute a particular offense, it is sufficient in an indictment to describe those acts in the language employed in the statute, applying them, of course, concretely, to the person charged." We think the indictment here is sufficient to charge bribery as defined in subdivision 6 of section 7 and section 86 of the Penal Code. Nor can we see how the district attorney could have well stated with greater particularity the acts of which the crime alleged is predicated. It was held in *Ex parte McNulty,* 77 Cal. 164,[1] [19 Pac. 237], that even where inartificially drawn, "if the complaint shows an evident attempt to state the essential facts which constitute the crime sought to be charged the defect in the statement would not warrant the discharge of the defendant" on *habeas corpus.* (See, also, *Ex parte Kowalsky,* 73 Cal. 120, [14 Pac. 399], where it was said: "If enough appears in such defective indictment to

[1] 11 Am. St. Rep. 257.

show that an offense has been committed of which the court has jurisdiction, the party charged cannot be discharged under a writ of *habeas corpus*.'')

4. Upon the petitioner's fourth point it need only be said that the court, in our opinion, had jurisdiction of the cause. The writ is discharged and prisoner remanded.

· Buckles, J., and McLaughlin, J., concurred.