[Crim. No. 52.    Third Appellate District.—March 12, 1908.]

## THE PEOPLE, Respondent, v. E. J. EMMONS, Appellant.

CRIMINAL LAW—MOTION TO SET ASIDE INDICTMENT—CHALLENGE TO PANEL—ABSENCE OF EXCEPTION.—An exception is required under sections 1170 and 1172 of the Penal Code·to the ruling of the court upon a motion to set aside the indictment, and in disallowing a challenge to the panel of the grand jury; and where the record discloses no exception to the rulings of the court upon those matters, this court is precluded from considering the questions involved therein.

ID.—REVIEW UPON APPEAL—BILL OF EXCEPTIONS—WAIVER.—Any exception, to be reviewed upon appeal, must be incorporated in a bill of exceptions properly authenticated; and if the defendant does not save an exception to the ruling of the court, the objection is deemed to be waived.

ID.—BRIBERY OF STATE SENATOR—SUFFICIENCY OF INDICTMENT.—*Held,* upon the authority of *Application of Bunkers,* 1 Cal. App. 611, and *People* v. *Bunkers,* 2 Cal. App. 197, that the indictment in this case sufficiently charges the bribery of the defendant as a state senator and member of a Senate committee, under a promise and agreement that his official action, vote and opinion as state senator should be influenced thereby to prevent an investigation by said committee of certain building and loan associations.

ID.—EVIDENCE—CONSPIRACY—DECLARATIONS OF CO-CONSPIRATOR—ORDER
OF PROOF.—Where the prosecution relied upon a conspiracy be-
tween three senators, members of the Senate committee, and other
persons connected with building and loan associations appearing be-
fore the committee, to secure immunity to them for a sum paid to
each senator, the order of proof of declarations made to a senator
previously convicted of such bribery by a third person connected
with one of such building and loan associations was in the discretion
of the court, which did not err in overruling the objection that such
declarations were hearsay, on the ground that the conspiracy with
such third person was not proved, if the prosecution subsequently
proved that such third person was a co-conspirator.

ID.—REFUSAL OF COURT TO ORDER PRODUCTION OF UNSIGNED STATEMENT
OF CONVICTED SENATOR.—It was not prejudicial error for the court
to refuse to direct the district attorney to produce an unsigned
and unsworn statement of the previously convicted senator for the
use of the defendant in cross-examination, where the same would
not be admissible for any purpose, if not shown to be written by
authority of the witness, and then only in order to lay a foundation
for showing it differed from his testimony on the present trial.
The ruling cannot be deemed prejudicial where there is no showing
that the defendant was prejudiced thereby.

ID.—MOTION TO STRIKE OUT ANSWER OF WITNESS—RELEVANT PORTION.
A motion to strike out the whole of an answer of a witness to a
question was properly denied when the court could not anticipate
the answer, and a portion of the same is responsive to the question
and is relevant. The motion should have been directed only to the
objectionable portion of the answer of the witness, and having failed
to do so, the defendant cannot complain of the ruling upon appeal.

ID.—FEIGNED ACCOMPLICES FOR PURPOSE OF DETECTION—RELEVANT TES-
TIMONY.—Testimony as to declarations of a co-conspirator made to
feigned accomplices who were engaged merely in a scheme to expose
and punish the same, though made in the absence of the defend-
ant, were admissible on the question whether such witnesses were
real or feigned accomplices, and to trace the money received as a
bribe.

ID.—PUBLIC POLICY AS TO FEIGNED ACCOMPLICE—TRAP FOR APPREHEN-
SION.—It is not against law or public policy for feigned accom-
plices, who did not suggest nor encourage the commission of the
crime, and who have been informed of its commission, and of the
purpose of the conspirators, to lay a trap for their apprehension
and punishment.

ID.—IMPEACHMENT OF WITNESSES FOR PROSECUTION—REMOTE EVIDENCE
—FOUNDATION NOT LAID—REDIRECT EXAMINATION.—Remote testi-
mony, the purpose of which was to affect the credibility and impeach
the testimony of witnesses for the prosecution, which was of no

importance for that purpose without indulging in unauthorized speculation, and for which no foundation was laid on cross-examination,. was not admissible on redirect examination.

ID.—SEPARATION OF JURY DURING TRIAL—INNOCENT PURPOSE—COMMUNICATION CONCERNING TRIAL DISPROVED.—When the separation of the jury during the trial was shown to be for only an innocent. purpose, and that it was not the occasion for any communication. at all concerning the case on trial, and that the separated juror was in charge of an officer, such separation was not fatal to the verdict.

ID.—USE OF INTOXICATING LIQUORS.—The fact that some of the jurors used intoxicating liquors in moderation during the trial does not vitiate the verdict where it appears that none of them were intoxicated, and that no liquors of any kind were used after the submission of the cause.

ID.—INSTRUCTIONS.—An appellant cannot complain of an instruction given at his request; and instructions requested by the appellant which were inapplicable to the evidence or erroneous, or which called the attention of the jury to a particular witness, or which were included in the charge given, were properly refused.

ID.—MISCONDUCT OF JUROR—TIME LIMIT—QUALIFICATION—NEW TRIAL. —CONSTRUCTION OF CODE.—The misconduct of a juror which is made ground for a new trial under subdivision 3 of section 1181 of the Penal Code is only such misconduct as has occurred since he was sworn as a juror to try the case, and does not include any misconduct as to his declaration under oath as to his qualification as a juror.

ID.—EVIDENCE AS TO QUALIFICATION OF JUROR NOT A GROUND FOR NEW TRIAL.—Whatever may be the rule in other jurisdictions, evidence given as to the qualification of a juror is not ground for a new trial in this state.

ID.—AFFIDAVIT NOT AUTHENTICATED.—An affidavit filed in the court below which is not authenticated in any manner by the trial judge, nor shown to have been used on the motion for a new trial, cannot be considered.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial. E. C. Hart, Judge.

The facts are stated in the opinion of the court.

Grove L. Johnson, for Appellant.

U. S. Webb, attorney general, and J. Chas. Jones, for Respondent.

BURNETT, J.—By an indictment found by the grand jury of Sacramento county defendant was charged with the crime "of asking and receiving a bribe," committed in January, 1905, while he was a state senator of the thirty-second senatorial district and a member of the Senate committee on commissions and retrenchment. The money was sought and received by appellant, so it is alleged, under a promise and agreement that his official action, vote and opinion as such senator should be influenced thereby in connection with an investigation by said committee of certain building and loan associations. Defendant was convicted and sentenced to the penitentiary for a term of five years. He appeals from the judgment and the order denying his motion for a new trial.

For the reason that the record discloses no exception to the ruling of the court we are precluded from considering the question involved in the motion to set aside the indictment and the challenge to the panel of the grand jury. Any exception taken, in order to be reviewed, must be properly authenticated in the bill of exceptions, and if the defendant does not save an exception to the ruling of the court the objection is deemed to have been waived. (*McCartney* v. *Fitz Henry*, 16 Cal. 185; *Keeran* v. *Griffith*, 34 Cal. 580; *Lee* v. *Murphy*, 119 Cal. 364, [51 Pac. 549, 955]; *People* v. *Trask*, 7 Cal. App. 103, [93 Pac. 891].) In the last case it is said: "Defendant having reserved no objection to the action of the court above set forth we are not called upon to determine whether the course adopted by the court was erroneous or not." That an exception is required to the ruling of the court in disallowing a challenge to the panel and in denying the motion to set aside the indictment is provided in sections 1170 and 1172 of the Penal Code. The point was made by the attorney general in his brief and it is passed by without notice in appellant's closing brief for the reason, we assume, that its conclusiveness is recognized by defendant and his learned counsel. At any rate, we must presume in favor of the action of the court below that no exception was taken, and we are not at liberty to follow the interesting discussion of the method by which the grand jury was selected, and of the qualification of certain of its members, in which counsel have indulged.

No authority is cited in support of appellant's contention that the demurrer to the indictment should have been sustained. It is declared simply that "an inspection of the indictment, together with the demurrer, will serve to call the attention of the court to the faults of said indictment better than any argument in this brief." We do not agree with appellant that the court committed error in overruling the demurrer, but we do not deem it necessary to elaborate our views, as the question has been virtually foreclosed by the decision of this court in the case of *People* v. *Bunkers,* 2 Cal. App. 197, [84 Pac. 364], in which the supreme court denied a rehearing, wherein it is said: "It is unnecessary to insert a copy of the indictment or to consider its sufficiency in this opinion, for such sufficiency was carefully considered in another proceeding and a copy of the indictment is contained in the decision therein filed. (*Application of Bunkers,* 1 Cal. App. 61, [81 Pac. 748].)" In the latter decision it is said: "We think the indictment here is sufficient to charge bribery as defined in subdivision 6 of section 7 and section 86 of the Penal Code. Nor can we see how the district attorney could have well stated with greater particularity the acts of which the crime alleged is predicated." The two indictments are in the same language. In fact, the prosecution is based upon the theory of a conspiracy on the part of Bunkers, appellant and two other senators to use their official positions to extort money from certain building and loan associations for immunity from investigation, said conspiracy culminating in the receipt by each of the conspirators of the sum of $350 upon a common understanding and agreement as to said investigation. In each case the demurrer was properly overruled.

That there may be no misunderstanding of the position of appellant as to certain rulings of the court during the trial, we quote from his brief as follows: "The defense at the trial was based upon the falsity of the testimony that was offered for the prosecution, and the further fact that the testimony so offered was the result of a conspiracy on the part of Grange, Corbin et als., to evade a thorough examination of the Continental Building and Loan Association because of the fact that the affairs of said association had been theretofore conducted in a manner detrimental to the stock-

7 Cal. App.—44

holders of that institution, and that Corbin had been in the past using the funds of the association for his own private purposes. The evidence was offered for the purpose of showing, first, the animus of the witnesses against the defendant, and, second, for the purpose of affecting their credibility before the jury. . . . The further defense was made that there was no conspiracy as alleged by the prosecution and attempted to be shown by them." With the foregoing statement in view we proceed to notice all the exceptions of appellant argued by him, which we consider worthy of specific attention. The first of these is based upon the order overruling an objection to the following question addressed to the witness Bunkers: "Now, then, what was the conversation between you and Jordan on the train?" The contention is that no conspiracy had been shown, and hence, that the evidence sought to be elicited was within the rule excluding hearsay testimony; but the answer is that the order of proof is within the discretion of the court and that subsequently other evidence was received that Jordan was a co-conspirator.

No error was committed by the court in refusing to direct the district attorney to produce a certain writing containing a statement of the witness Bunkers. The statement was not signed by Bunkers; it had not been read over to him; he had heard read only a portion of it; he had not sworn to it and did not know in whose possession it was. What is said in *People* v. *Glaze*, 139 Cal. 157, [72 Pac. 965], is in point here: "The statement could not have been used in evidence except for the purpose of impeaching the witness by showing thereby that he had made statements out of court inconsistent with the testimony given by him in the trial. The only statements that can be used for that purpose, if in writing, are statements made by the witness himself, either directly in his handwriting or over his signature, or indirectly by his adoption or admission of the correctness of a written report of his statements made by some other person. He cannot be held responsible for a statement taken down by another purporting to be a report of his oral declarations, unless he has been made acquainted with the contents of such statement, and directly or indirectly admitted that it was correct. Unless it is shown that there is good reason to be-

lieve that the document when produced would be admissible in evidence for some purpose in the case the court need not compel its production.'' It may be that the statement would have been of assistance to defendant in his cross-examination of the witness Bunkers in an effort to lay a foundation for the latter's impeachment, but that is not a sufficient reason for interfering with the discretion of the trial court exercised in denying the request, especially as there is no showing that defendant suffered prejudice thereby.

Appellant complains of the action of the court in allowing witness Grange to testify to a declaration made by Jordan to the effect that defendant was trying to get evidence to enable him to have a warrant issued for the arrest of Gavin McNab and Washington Dodge. But it is apparent that the objection to the question: ''State the conversation that took place at that time between you and him in regards to this matter if anything,'' was properly overruled for reasons already stated. The court could not anticipate what the answer would be, and a portion of it was certainly responsive and material. The appellant should have moved to have the objectionable portion stricken out, if he so desired, but having failed to do so it is too late now to complain. (*People* v. *Lawrence*, 143 Cal. 155, [76 Pac. 893].)

Certain witnesses were allowed to testify as to what they did after conversations with Jordan, and it is insisted that this was error ''for the reason that all of this was done without the knowledge of the defendant, and in such a manner that the defendant could not have known anything about it, and it was not in furtherance of any conspiracy that the defendant was alleged to be engaged in.'' This testimony, however, was admissible on the question of whether these witnesses were real or feigned accomplices and also to trace the money that was received as a bribe. (*People* v. *Northey*, 77 Cal. 632, [19 Pac. 865, 20 Pac. 129], and *People* v. *Bunkers*, 2 Cal. App. 197, [84 Pac. 364, 370].) It was contended by the prosecution that these witnesses did not suggest, advise or encourage the commission of the crime and had no criminal intent, but were engaged merely in a scheme to detect, expose and punish the senators. On the other hand, defendant insisted that they had a motive in discouraging the investigation of the building and loan associations

and were actual participants in the bribery. Their acts and declarations during the pendency of the negotiations were therefore important as throwing light upon this issue, and were not self-serving or hearsay, as they are justly considered by the decisions to be within the rule of *res gestae.* We do not understand that it is necessary for a feigned accomplice to take into his confidence an officer of the law or suffer the imputation of criminal intent. If he did consult an officer, it would be a circumstance in favor of innocence, but it is not the exclusive method by which he may show his freedom from participation in the crime. We think the evidence is sufficient to support the conclusion that these witnesses were not accomplices, and that they did not suggest nor encourage the commission of the crime, but that after being informed of the purpose of the conspirators they laid a trap for their apprehension and punishment. In this they did nothing against the law and their conduct was not opposed to sound public policy. Nor does it follow, as contended by appellant, that no crime was committed by him even if he received the money with a felonious intent. Some decisions are cited apparently to that effect, but the question has been set at rest here by the Bunkers case, *supra.*

Among the points to which most importance seems to be attached by appellant is that growing out of the testimony of one W. J. Palethorpe, a witness for the defense. It is contended that his examination was confined within limits too narrow, it being restricted to the time of the examination by him of the books of the Continental Building and Loan Association during the months of November and December preceding the holding of the alleged investigation by the committee of which the defendant was a member. The particular question to which the objection was sustained and of which ruling appellant complains is as follows: "What, if anything, did the books of the Continental Building and Loan Association show with reference to the dealing of William Corbin with the association and with reference to the condition of his accounts with that association in the year 1902?" The general objection was made and also that it was too remote and not redirect examination. The last ground was undoubtedly well taken, but we think also the court's action was right for other reasons.

The evidence was offered to show a motive for opposition to an investigation of the association on the part of certain persons who occupied prominent positions therein, or, in the language of appellant's counsel, ''it necessarily would affect the minds of these people and cause them to oppose an inquiry, to oppose an investigation and to form a conspiracy and a plot to prevent an investigation.'' The purpose, then, was to affect the credibility and impeach the testimony of witnesses for the prosecution, and thereby reduce the effect of the evidence against defendant. It would make no difference how anxious certain persons were to prevent an investigation if that anxiety did not affect the evidence in the case on trial. Any reason for opposing said investigation would be entirely immaterial unless it could be seen that it might be of importance in determining whether any witness told the truth. How could any transaction of Mr. Corbin in 1902 with the association affect the credibility of any witness against the defendant? If Mr. Corbin had testified there might be some ground for appellant's contention, but Mr. Corbin was not a witness in the case nor was there any effort made to show that he had influenced any witness to testify, nor that any witness had a motive for preventing a disclosure of the affairs of the association. In the argument in favor of the admissibility of the evidence it was not claimed even that evidence would be offered to show how Mr. Corbin's interest in the investigation would be connected with the interest that any witness might have in coloring his testimony. There was, indeed, some intimation by counsel that Mr. McNab was concerned in concealing the said transactions of Mr. Corbin, but no evidence was offered to that effect and it finds no support in the record. As far as disclosed by the proceedings the testimony sought to be elicited might relate as well to any other stockholder as to Mr. Corbin or to a stockholder in any other corporation. The contention really amounts to this: Mr. Corbin had certain transactions with the corporation in 1902 which he did not care to have made public; therefore he was interested in preventing an investigation. Hence we must assume that he entered into a conspiracy with some of the witnesses to commit a crime in order that a disclosure might not be made, and also that the testimony in the case has been affected by

such conspiracy or at least by Mr. Corbin's concern about the investigation. We cannot indulge in any such speculation.

Again, if it was sought, as claimed by appellant, to discredit any witness by showing his interest or bias, there is authority for holding that the proper foundation should have been laid by suitable cross-examination of said witness. The rule is so stated in *People* v. *Delbos,* 146 Cal. 734, [81 Pac. 131], as follows: "It was proper to impeach the motives of the prosecuting witness by proof that she had instituted the prosecution for the purpose of extorting money from the defendant, but in order to lay the foundation for such impeachment the prosecuting witness should first be directly asked if she had not begun the prosecution for that purpose." But aside from the foregoing, assuming that it was proper to show Mr. Corbin's interest in the investigation, the line of inquiry was indulgently permitted by the court to be pursued sufficiently for that purpose. The fact sought to be shown would have been simply cumulative. It is due the witness, however, to say that in cross-examination he declared: "I told Mr. Corbin on several occasions that the Continental was an enormously large corporation and from what I could see was financially sound."

The claim is made that the verdict should have been set aside on account of the separation of the jury during the trial. The court had made an order requiring the jury to be kept together, as provided in section 1121 of the Penal Code. The affidavits introduced by appellant upon this ground are to the effect that one of the jurors was seen talking with some one not a juror in the hallway of the courthouse, and that he was heard to say: "Well, ask him." And again, a deputy sheriff in company with one of the jurors was seen in a store on K street. After a time the officer came out alone and got into a buggy. The juror shortly after came out of the store unattended and got into the buggy and they drove away together. Again, one of the jurors was seen standing in a crowd of people at Oak Park for some little time, separated from the other jurors.

The counter-affidavits show that a deputy sheriff took one of the jurors to said store on K street to enable him to make a purchase, that they remained together while in the store,

that said deputy sheriff walked out a few feet ahead of the juror to untie the horse, that no word was spoken about the case and said juror had no communication whatever with anyone except in reference to his purchase. Furthermore, that the jurors were not allowed to separate at Oak Park, and not one of them had any communication about any matter connected with the case. The affidavits of the prosecution, indeed, are to the effect that whatever separation occurred was only for a few minutes, was for an innocent purpose, and was not the occasion for any communication at all concerning the case on trial.

Appellant cites *People* v. *Maughs,* 149 Cal. 253, [86 Pac. 187], as authority for his claim that the separation was fatal to the verdict. That case, however, is not in point. The difference between that and this is clearly seen in the following statement by Mr. Justice Henshaw: ''After the jury had been impaneled and sworn and had been placed in charge of the sheriff, and the sheriff had been sworn to take charge of the jury under section 1121 of the Penal Code, the court allowed eight of the jurors to separate and go to their homes, while the remaining four were retained in the sheriff's custody.'' It is properly said that ''There is absolutely no warrant in the law for the course adopted, and the order permitting the jury to separate was error—indeed, error of such nature that the brief of the state offers no word in extenuation or justification of it.'' But even in that case it is not intimated that the error would have been prejudicial if the evidence had shown that during the separation the jurors had no communication whatever with anyone concerning the case.

But there are decisions of our supreme court directly upholding the ruling of the trial court that the alleged separation did not demand a new trial.

In *People* v. *Symonds,* 22 Cal. 348, it is held that ''The mere fact that the jury in a criminal case separate without permission of the court does not require that a new trial should be granted. The presumption that the jury may have been subject to improper influences which attaches to the fact of such separation may be removed by an affirmative showing that no injury to the defendant resulted therefrom.''

In *People* v. *Bemmerly*, 98 Cal. 301, [33 Pac. 263], the facts are stated as follows: "It appears that after an adjournment upon one of the days while the cause was on trial, certain of the jurors, while upon the street in company with the sheriff, joined a crowd of people who were listening to the utterances of a street fakir, and were for a few minutes out of the sight or custody of the sheriff; that on a Sunday which intervened during the trial, eight of the jurors, in company with a deputy sheriff, attended church separately from the remaining four, and that some of the other four listened to the singing and preaching of the Salvation Army in the streets of Woodland; that one of the jurors, in the company of a deputy sheriff, visited his place of business without being accompanied by the others; that individual jurors were several times during the trial separated from the body of jurors for a few minutes at a time and occasionally were out of sight of the officer who had them in charge and at times engaged in conversation with other persons." It is apparent from the foregoing statement that the appellant there made a much stronger showing than the appellant here. But the court declared: "We cannot hold that these facts constituted such misconduct as to justify setting aside the verdict. The direction to the sheriff to keep the jury together . . . was for the purpose of having the trial conducted in an orderly and discreet manner, and was evincive of the desire of the court to prevent the jury from being affected by any improper influences. The ultimate object of these instructions was not to keep the jury together, but to prevent them from improper intercourse with others, and their being kept together was merely a means of accomplishing the ultimate purpose. . . . The mere fact that the direction of the court was violated does not give to the defendant the right to have the verdict set aside. He must show as fully as if the direction had not been given that one or more of the jurors was influenced in his verdict by some outside influence during or in consequence of such separation." We are not required in the case at bar to hold that the burden was upon defendant to show that the jurors were improperly influenced because the prosecution assumed the burden of showing that the defend-

ant was not prejudiced by the separation of the jury and offered sufficient evidence to justify a finding to that effect.

In *People* v. *Adams,* 143 Cal. 209, [101 Am. St. Rep. 92, 76 Pac. 954], the distinction is shown between a separation during the progress of the trial and one after the cause is submitted to the jury. It is there said: "As to the former there is no law requiring the jury to be kept together, although the court may order them to be so kept; and it is not necessary in the case at bar to consider the significance of a violation of such an order. But it is provided in the Penal Code (sec. 1128), that after the jury have finally retired for deliberation they must be kept together; and one of the express grounds for a new trial is 'when the jury has separated without leave of the court after retiring to deliberate upon their verdict.' (Sec. 1181.)"

The distinction is an important one, and it has been overlooked in some of the decisions. Whatever may be the rule in the former case whenever the jury separates without leave of court after the case is submitted the burden should be cast upon the prosecution to show that the defendant has not been injured thereby. But, as we have seen, the separation of which complaint is made here occurred before the case was submitted, and the showing by the appellant was exceedingly meager and its effect was entirely overcome by the evidence for the people.

Appellant inveighs especially against the conduct of the majority of the jurors in partaking too freely of intoxicating liquors during the trial of the case. If the affidavits for appellant were not controverted, we should be constrained to hold that some of the jurors drank to excess and more than is consistent with that clarity of judgment and equipoise of conscience essential to a proper discharge of the important duties of a juror. But the counter showing was amply sufficient to justify the court in finding that not one of the jurors was under the influence of liquor at any time, and no intoxicants at all were consumed after the jury had retired to deliberate upon a verdict. The character of the showing made by the people is illustrated by the following quotation from the affidavit of Mr. Chambers, the deputy sheriff who had charge of the jury: "Dr. G. C. Simmons instructed affiant that all of said jury who had been accustomed to the

use of alcoholic liquors must during the progress of said trial, and while they were in charge of said sheriff be permitted to have their usual rations of liquor or that said jurors would suffer severe illness''; he then details the times and occasions when liquor was consumed, and states that at no time did any of said jurors take more than one drink and that of a very moderate quantity; that at no time did. any member of the jury show in the slightest the effects of liquor; ''that affiant was constantly in attendance upon said jury during the time of their deliberation on a verdict, that at no time from the time said jury retired from the courtroom to deliberate upon their verdict up to the time that they returned their verdict into court and were discharged was any member of said jury permitted to have any liquor of any kind and during said time none of said jurors indulged in any liquor.'' There is not a particle of evidence that the trial judge or the attorneys noticed any evidence of intoxication on the part of any of the jurors at any time, and unless we are prepared to hold that the consumption of any quantity of liquor by a juror disqualifies him, we must uphold the ruling of the court below. Indeed, said ruling, under the showing made, is in strict accord with decisions of the supreme court. (*People v. Deegan,* 88 Cal. 602, [26 Pac. 500]; *People* v. *Bemmerley,* 98 Cal. 299, [33 Pac. 264]; *People* v. *Van Horn,* 119 Cal. 333, [51 Pac. 538]; *People* v. *Sullivan,* 129 Cal. 557, [62 Pac. 101].)

The court committed no error in giving the instruction as to the corroboration of an accomplice. Appellant selects one sentence therefrom and makes it the basis of the criticism that ''It is not the law that proving the identity of the defendant, namely, that he is the man charged with the offense, is sufficient, much more than that is needed.'' The instruction treats of the two phases of the question separately, to wit, the commission of the offense and the identity of the one committing it, and it is neither ''misleading'' nor ''improper''; and besides, it appears to have been given at the request of appellant and hence he cannot complain.

The court was justified in refusing the following instruction: ''If the jury believe from the evidence herein that the witness, Harry Bunkers, was induced or influenced to become a witness and testify in the case by any promise of

immunity from prosecution or punishment or by any hope
held out to him that if he testified against the defendant
he would not be prosecuted for any perjury committed by
him, then the jury should take such facts into consideration
in determining the weight which ought to be given to such
·testimony thus obtained. Such testimony should only be re-
ceived by the jury with caution and scrutinized with care.''
There is no evidence in the record that any promise was
made to the witness that he would not be prosecuted for per-
jury if he would testify in the case. Hence, the instruction
was properly refused for that reason. It is true that there
is some evidence that Bunkers was promised immunity from
prosecution for perjury—obviously referring to the testimony
he gave at the trial of his own case—if he would make a
statement to the district attorney, but that is entirely differ-
ent from the hypothesis assumed in the instruction.

Again, the practice by specific instructions of calling the
attention of the jury to the testimony of a particular witness
should not be encouraged. It is better, as was done here,
to instruct the jury as to the principles of law involved and
leave their application to the facts—where it belongs under
our system—to the jurors themselves.

The court fully and clearly directed the jury as to its
duty and power of judging the evidence and determining
the credibility of witnesses; for example: ''You will weigh
carefully· the testimony of each and all of the witnesses in
the case, and give to the same just such credit as you con-
scientiously believe it entitled to; and in considering what
weight you will give to the testimony of any and all the
witnesses in the case, you will consider the character and
appearance of the witnesses upon the stand, the consistency
and reasonableness of their statements, their apparent in-
terest and desire to tell the truth, their feelings, motives and
conduct so far as made known to you by the evidence dur-
ing the course of the trial of this case.'' After hearing that
and the other instructions given, if any juror would not un-
derstand that it was his duty to consider any promise of im-
munity made to a witness as affecting his credibility he would
be incapable of enlightenment.

As to the other criticisms of the action of the court in ref-
erence to instructions, we deem it sufficient to say, in the

language of *People* v. *Bunkers:* ''The instructions requested by the defendant and refused by the court were either erroneous or inapplicable, or were fully covered by other instructions. The charge read as a whole was full, fair and comprehensive, and the appellant certainly has no cause to complain that the law was not fully and clearly stated to the jury.''

The only other matter that we deem worthy of notice arises from the ruling of the court upon the following question addressed to one Patrick Kelly in support of the motion for a new trial: ''State whether or not you had a conversation with him (Mr. Amariah Johnson, one of the jurors) last February, 1905, in this city concerning the charge against the defendant?'' The general objection was made to the question, and the district attorney urged that ''if offered for the purpose of showing bias or prejudice on the part of juror Johnson, they are precluded from showing such fact at this time, that the bias or prejudice of any juror who may be sworn to try a criminal case cannot be shown for the first time on motion for a new trial.'' The defendant offered to prove by the witness that he had a conversation with the said Johnson before he was sworn as a juror, in which the latter stated ''that he had attended the examination before the Senate committee which investigated the charge, and that all these senators, including the defendant, were guilty and ought to be punished, and that every one of them should be convicted, and that he was certain of their guilt.'' The said juror had stated on his *voir dire* that all he knew about the case was what he read in the ''Sacramento Union''; that he attended the meeting of said Senate committee one night, but that he was up in the gallery and couldn't hear anything that was said; that he had never discussed the matter with anyone except the members of his own family, and that he had no opinion about the case.

The attack of appellant is really addressed to the qualification of the juror, although it is claimed that his declarations under oath, in view of his alleged statements to the witness Kelly amount to such misconduct as to entitle appellant to a new trial. But it is clear that such misconduct, as far as the rights of appellant are concerned, is unimportant except as it relates to the qualification of Johnson as a fair,

unbiased juror. It is clear that the "misconduct" of a juror which is a ground for a new trial is misconduct while he is such juror, and has no reference to what he does before he is sworn to try the cause. Subdivision 3 of section 1181 of the Penal Code makes that plain as follows: "When the jury . . . has been guilty of any misconduct by which a fair and due consideration of the case has been prevented." Hence, if appellant's objection to juror Johnson amounts to anything, it goes to his qualification and not to his misconduct as a juror.

But whatever may be the rule in other jurisdictions, it has been decided in this state that the qualification of a juror is not a ground for a motion for a new trial. In *People* v. *Azoff*, 105 Cal. 635, [39 Pac. 59], it is said: "If public policy prohibits the jury from impeaching their verdict by their affidavits, it must follow that the same policy will prevent its being done by statements made by the jurors." To the same effect are *People* v. *Soap*, 127 Cal. 411, [59 Pac. 771]; *People* v. *Dobbins*, 138 Cal. 694, [72 Pac. 339].

In *People* v. *Fair*, 43 Cal. 137, the question is elaborately discussed, and it is held that "The fact that a juror had formed and expressed an unqualified opinion of the guilt of the accused, is not, under our practice, ground for a new trial, when the objection is taken for the first time after the trial, upon affidavits showing disqualification."

In *People* v. *Boren*, 139 Cal. 215, [72 Pac. 899], it is said: "Another ground upon which it is contended a new trial should have been granted is that an uncle by marriage of the district attorney was a member of the trial jury; that this fact was unknown to the defendant or his counsel until after the trial; that defendant's peremptory challenges had not been exhausted; and that if these facts had been known, defendant would have challenged him peremptorily. These facts appear by affidavit, but constitute no ground for a new trial. Section 1181 of the Penal Code specifies the only grounds upon which a new trial may be granted, and this objection is not included in the grounds there stated. An objection to a juror must be taken before the juror is sworn to try the cause; but the court may, for cause, permit it to be taken after the juror is sworn and before the jury is completed."

Again, if the practice for which appellant contends should be tolerated, as it tends strongly to jeopardize the practical administration of justice and open wide the door to fraud and perjury, it should be permitted only after a satisfactory showing of diligence and good faith on the part of appellant. Even if it were a ground for a new trial, the court would not be justified in considering it unless it was shown that at the time of the examination of the juror the fact concerning the disqualification was not known to defendant nor his counsel. We must infer, of course, in support of the action of the court, that appellant knew at the time he examined the juror Johnson of what he proposed to show by the witness Kelly, and that by his failure to present the facts before the trial he waived them. (*People* v. *Staples,* 149 Cal. 405, [86 Pac. 886].) It is of no concern that the district attorney did not make this specific objection, as we are required to sustain the ruling of a court of record, if proper, regardless of the form of the objection. (*Spotswood* v. *Spotswood,* 4 Cal. App. 711, [89 Pac. 362].)

Appellant, upon suggestion of diminution of the record, was permitted to file in this court his affidavit, which appears to have been filed in the office of the county clerk of Sacramento county October 24, 1905, in which he sets out that he "did not learn of the alleged misconduct of the juror A. Johnson until after the trial ended and the verdict had been rendered in the above-entitled action." It is obvious that this is an attempt to amend the bill of exceptions, but admitting that we can consider the said affidavit, it is not authenticated in any manner by the trial judge, nor is there anything to indicate that it was used upon the said motion for a new trial.

We have given all the points made by appellant careful consideration, but we are entirely satisfied that the record discloses no prejudicial error.

The defendant was fairly tried and justly convicted, and the judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 11, 1908.