[No. 14334.  In Bank. —April 1, 1891.]

J. A. DONLON, PETITIONER, v. W. H. JEWETT, AUDITOR OF VENTURA COUNTY, RESPONDENT.

CLASSIFICATION OF COUNTIES — FORTY-FIRST CLASS — VENTURA COUNTY — SALARY OF ASSESSOR. — Under the act of March 16, 1889 (Stats. 1889, p. 232), amendatory to section 162 of the act of March 14, 1883, providing for the division of counties in classes, the county of Ventura, having a population of 5,073, is a county of the forty-first class, and the county assessor of that county is entitled only to the salary provided for assessors in that class of counties, and not to the salary provided for assessors in counties of the class numbered 39½.

ID. — CLASS 39½. — CONSTRUCTION OF AMENDING ACT — MISTAKE IN FIGURES. — The act of March 16, 1889 (Stats. 1889, p. 232), adding a new class of counties, numbered 39½, having a population between 5,000 and 5,640, must be construed so as to reconcile a plain conflict with the re-establishment by the same act of classes 40 and 41, which is done by assuming a mistake in the use of numbers, and that the legislature intended to make class 39½ include only counties having a population between 5,600 and 5,640.

STATUTORY CONSTRUCTION — SCOPE AND EFFECT OF STATUTE — AMENDED ACT. — In the construction of a statute, effect must be given, if possible, to every substantive provision of the statute, consistent with its entire scope and object, and a revised or amended act must be construed as a new and original piece of legislation, in view of all its parts, and giving to every part, if possible, some effect consistent with the whole, and as little as possible repugnant to other parts.

APPLICATION to the Supreme Court for a writ of mandamus. The facts are stated in the opinion.

*Barnes, Selby & Orr,* and *Aylett R. Cotton,* for Petitioner.

*H. L. Poplin,* and *Blackstock & Shepherd,* for Respondent.

*M. E. Sanborn, Amicus Curiæ.*

BEATTY, C. J. — The petitioner is assessor and the respondent auditor of Ventura County, and it is the duty of the latter, prescribed by law, to draw his warrant at the end of each month for a monthly installment of the salary of the former. At the end of the month of January, petitioner demanded a warrant for his Jan-

uary salary, claiming that Ventura was a county of the thirty-ninth-and-one-half class, and that his annual salary as assessor of a county of that class was three thousand two hundred dollars. But the respondent, being in doubt whether Ventura was, according to a correct construction of the statute, a county of the thirty-ninth-and-one-half class, or of the forty-first class, in which the assessor's salary is less than three thousand two hundred dollars, refused to draw his warrant on that basis. Thereupon this original proceeding was commenced here for a writ of mandate to compel the auditor to perform his supposed duty.

There is an entire agreement between the parties as to all matters of fact, and the only question in the case is one of statutory construction.

Section 5 of article 11 of the constitution enjoins upon the legislature the duty of providing for a uniform system of county government, but for the purpose of regulating the compensation of county officers permits a classification of counties according to population. In pursuance of this provision an act was passed March 14, 1883, entitled "An act to establish a uniform system of county and township governments" (Stats. 1883, p. 299), by which (sec. 162) the counties of the state were divided into forty-eight classes, according to their population as established by the federal census of 1880, the thirty-ninth, fortieth, and forty-first classes being defined as follows: —

"Counties having a population of five thousand six hundred, and under six thousand, shall belong to and be known as of the thirty-ninth class.

"Counties having a population of five thousand three hundred, and under five thousand six hundred, shall belong to and be known as counties of the fortieth class.

"Counties having a population of five thousand, and under five thousand three hundred, shall belong to and be known as counties of the forty-first class."

Ventura, having a census population of 5,073, fell into the forty-first class.

By section 163 of the same act the salaries of the several county officers of the respective classes of the counties were fixed.

By an amendatory act passed March 18, 1885, this section 163 was amended and divided into new sections, numbered consecutively from 163 to 210. In this amendatory act the salaries of officers of the thirty-ninth class were regulated by section 201, those of officers of the fortieth class by section 202, and those of officers of the forty-first class by section 203.

Another amendatory act was passed in 1887 (Stats. 1887, p. 178), and finally, on March 16, 1889, the act was passed (Stats. 1889, p. 232) which gives rise to the present controversy.

By this last amendatory act section 162 of the original act was so amended as to change the definition of the thirty-ninth class, and add a new class, numbered $39\frac{1}{2}$. A new section, numbered $201\frac{1}{2}$, was also inserted between sections 201 and 202, by which the salaries of officers of the thirty-ninth-and-one-half class of counties were regulated. By this amendment the definition of counties of the thirty-ninth class was changed so as to read as follows:—

"Counties having a population of 5,640, and under 6,000, shall belong to and be known as counties of the thirty-ninth class."

And the following definition was made of counties of the thirty-ninth-and-one-half class:—

" Counties having a population of 5,000, and under 5,640, shall belong to and be known as counties of the thirty-ninth-and-one-half class."

In all other respects, including the clauses defining the fortieth and forty-first classes, section 162 was re-enacted in precisely its original terms.

The effect of this legislation was to produce a conflict

in the terms of the statute, rendering it necessary to resort to construction in order to ascertain the intention of the legislature.

The thirty-ninth-and-one-half class, by its definition, embraces all counties having a population of 5,000, and under 5,640; that is to say, all counties formerly embraced in classes 40 and 41, and any county formerly embraced in class 39 with a population of 5,600, and under 5,640.

By reason of the amendment to the definition of class 39, it is brought into perfect conformity with the definition of the new class, but the literal re-enactment of the clauses defining classes 40 and 41 creates the conflict; for, as above shown, they consist of counties having a population, respectively, of five thousand three hundred, and under five thousand six hundred, and of five thousand, and under five thousand three hundred,— both of which classes are embraced in the definition of class 39½. Such being the terms of the statute, and the circumstances of its enactment in its present form, the petitioner contends that we must hold the intention of the legislature to have been to repeal the clauses defining classes 40 and 41, and to substitute for those classes, and a part of class 39, the newly defined class 39½. On the part of respondent it is contended that the intention was to preserve classes 40 and 41, and to make the new class consist of those counties only —formerly embraced in class 39—containing a population of 5,600, and under 5,640.

It is certain that the legislature intended one thing or the other; but either construction of the statute convicts it of a blunder, and the question to be solved is, whether the mistake consisted in the inadvertent use of the number "five thousand" instead of "five thousand six hundred" in defining class 39½, or in the re-enactment of the clauses defining classes 40 and 41.

. The principle of construction relied on by petitioner

in support of his contention is, that in cases of repugnancy a later statute controls an earlier one; from which he argues that the clause defining $39\frac{1}{2}$ being new, and those defining 40 and 41 being a mere republication of the terms of the original act, the former must govern.

But in view of the constitutional provision prescribing the method of revising and amending statutes and sections of statutes, can we, for the purpose of construing an amendatory act, consider its new features as being later in point of time than those parts of the original which are merely republished?·

The constitution, article 4, section 24, provides that "no law shall be revised or amended by reference to its title; but in such case the act revised or section amended shall be re-enacted and published at length as revised or amended."

The effect, and the only effect, of this requirement is to compel the republication of so much, and so much only, of the old law as the legislature intends to continue in force along with the amendment, and it would seem that one object of the provision must have been to prevent conflict and repugnancy between the new and the old portions of the statute, by requiring the incorporation of all amendments in the revised text of the statute or section amended. For necessarily the legislature by this method is compelled not only to scrutinize the amendment itself, but all other parts of the statute which are at the same time presented to view in their connected sequence, and we are not entitled to assume that the intention to enact the new portion was any more clear and distinct than the intention to modify its operation by the effect of such portions of the original act as have been thus deliberately preserved.

The duty of a court is, therefore, to endeavor to construe the revised or amended act in the same manner it would construe a new and original piece of legislation, viewing all its parts, giving to every part, if possible,

some effect consistent with the whole, and as little as possible repugnant to other parts, *Ut res magis valeat quam pereat.*

If, however, it is found that there is an irreconcilable conflict between the amendment and some portion of the old statute that has been preserved and republished in the revision, so that no effect can be given to one without destroying the operation of the other, and there is nothing else to indicate the probable intention of the legislature, it might be necessary to hold that full effect is to be given to the amendment and the re-enactment of the conflicting portion of the original act treated as a mistake.

It may be conceded that the cases cited by petitioner sustain his contention to this extent, but certainly they go no further, and in this case we think it not only unnecessary, but for many reasons inadmissible, to solve the difficulty in the mode suggested.

If it had been the intention of the legislature to abolish the fortieth and forty-first classes, and to consolidate them along with a part of the thirty-ninth into a new class, the short and simple and obvious means of accomplishing such intention was to amend the clause defining class 39, as was done; to amend the clause defining class 40 so as to make it embrace all counties containing a population of 5,000 and less than 5,640, and to drop the clause defining class 41. In addition to this, it would only have been necessary to amend section 202, regulating the compensation of officers of class 40 with or without a repeal of section 203, which, even though not repealed, would have been left with nothing to operate upon.

There was no need to resort to the use of a fractional number, $39\frac{1}{2}$, to designate a new class, if 40 and 41 were to be abolished; for in that case there were whole numbers enough, and to spare, for the purpose of such designation. And so was it equally unnecessary to resort to

the fractional number 201½ to designate the section regulating the compensation of officers of the new class of counties.

This is, to our minds, very conclusive proof that the legislature did not intend to abolish classes 40 and 41, but only to create a new class between 39 and 40, comprising one or more counties formerly included in class 39. Instead of being guilty of the elaborate and superfluous series of blunders imputed to it on the theory of petitioner, the legislature made the simple and comparatively natural mistake of using a wrong number in a single clause of the act, the number "five thousand" instead of the number "five thousand six hundred," in the clause defining the new class, 39½.

This view affords a simpler and more probable explanation of the discrepancies in the statute than any other, and has the merit of satisfying the cardinal rule of construction, which requires that some effect shall be given, if possible, to every clause of the contract, or substantive provision of a statute, consistent with its entire scope and object. And this view is corroborated by the fact that section 202, regulating the compensation of officers of the fortieth class, was not merely re-enacted, but was amended by the act we have been considering, so as to increase the salary of superintendent of schools from seven hundred to fifteen hundred dollars. If there was no intention to preserve the fortieth class, why this amendment?

Our conclusion is, that Ventura remains a county of the forty-first class, and that the petitioner can claim only the salary provided for assessors in that class of counties.

Writ denied.

PATERSON, J., HARRISON, J., McFARLAND, J., GAROUTTE, J., and DE HAVEN, J., concurred.