[No. C033351. Third Dist. Apr. 30, 2001.]

MEDICAL BOARD OF CALIFORNIA, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
ANSELM ON-SANG LAM, Real Party in Interest.

**COUNSEL**

Bill Lockyer, Attorney General, Gail M. Heppell, Fred A. Slimp II and Robert C. Miller, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Russell Iungerich for Real Party in Interest.

**OPINION**

**KOLKEY, J.**—This appeal requires us to decide whether Business and Professions Code section 2305[1]—a more specific statute—impliedly repeals section 141—a more general one that covers the same subject. Section 2305, the more specific statute, *mandates* disciplinary action against a medical licensee based on out-of-state discipline that "would have been grounds for discipline in California," whereas section 141, the more general statute, *permits* state licensing boards to impose discipline based on "a disciplinary action taken by another state."[2]

 The trial court concluded that a physician can be disciplined *only* under the more specific statute, section 2305, relying on the principle that " 'a general provision is controlled by one that is special, the latter being treated as an exception to the former.' " (*San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577 [7 Cal.Rptr.2d 245, 828 P.2d 147].) It therefore ruled that the Medical Board of California (sometimes referred to as the Board) "exceeded its jurisdiction by imposing the suspension [of the license of a physician] . . . on the basis of . . . section 141."

We disagree. As we shall explain, while sections 141 and 2305 overlap, that does not necessarily mean that the more specific statute—section

---

[1] Unless designated otherwise, all further statutory references are to the Business and Professions Code. The full text of section 2305 is set forth at page 1010, *post.*

[2] The full text of section 141 is set forth on pages 1009-1010, *post.*

2305—replaces, that is, impliedly repeals, the general one. " '[A]ll presumptions are against a repeal by implication. [Citations.]' "[3] Implied repeals may be found only where " 'there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are ". . . so inconsistent that the two cannot have concurrent operation." ' "[4] That is not the case here.

Instead, the two statutes here can be reconciled by treating section 2305 as an exception to, but not as a replacement of, section 141. Section 141, subdivision (a), *permits* any licensing board under the jurisdiction of the State Department of Consumer Affairs to impose discipline based on a disciplinary action taken by another state, a federal agency, or another country. Its language and origins suggest that it was meant to act as a catchall statute, granting licensing boards broad authority to impose discipline. That it was meant to coexist with specific statutes, like section 2305, is demonstrated in part by section 141's express acknowledgement elsewhere[5] that it does not preclude the administration of more specific statutes by specialized licensing boards. Section 2305, in contrast, *requires* disciplinary action against a medical licensee based on discipline imposed by another jurisdiction, but only where the other jurisdiction's action would have been grounds for discipline in California. Since the record in this case does not show that the requirements of the more specific statute, section 2305, were satisfied, the two statutes do not even conflict in this matter, and there is no reason why section 141 cannot be applied.

In fact, the very case cited by the trial court—*San Francisco Taxpayers Assn. v. Board of Supervisors, supra,* 2 Cal.4th at page 577—treats a special provision as an exception to, but not as a wholesale replacement of, a general provision. To do otherwise and treat the enactment of a specific statute as an implied repeal of a general one where the statutes are not so inconsistent that they cannot have concurrent operation, would condone a judicially inspired repeal of a statute without satisfying the stringent standards required for finding an implied repeal—standards designed to act as a legal bulwark against judicial trespass into the legislative province.

Our approach not only comports with settled principles of statutory construction, including the duties to avoid implied repeals and to reconcile two

---

[3]*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906]; accord, *Boyd v. Huntington* (1932) 215 Cal. 473, 482 [11 P.2d 383].

[4]*Garcia v. McCutchen, supra,* 16 Cal.4th at page 477.

[5]Section 141, subdivision (b); see page 1010, *post,* for its text.

statutes dealing with the same subject,[6] but it recognizes this court's constitutional role of construing, not rewriting (or worse, writing out), duly enacted statutes.

Accordingly, we shall issue a peremptory writ of mandate, directing the respondent superior court to set aside its judgment and remanding the matter for further consideration in light of this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Since 1975, Dr. Anselm On-Sang Lam (Dr. Lam)—the real party in interest here—has been licensed and registered to practice medicine and surgery in the states of Wisconsin and ·California.

At some point, the Wisconsin Medical Examining Board initiated an investigation, following an allegation that "Dr. Lam was premature in his attempt to repair a rectovaginal fistula which developed following repair of a fourth degree tear which occurred at the time of a vaginal delivery."

This investigation was concluded, however, by a stipulation of the parties—without the need for an evidentiary hearing or any findings. Pursuant to the stipulation, Dr. Lam maintained that he had engaged in no wrongdoing, and the Wisconsin Medical Examining Board ordered that Dr. Lam "not repair or attempt to repair rectovaginal fistulas" and that he refer patients who have such a condition to a gynecologist "for appropriate evaluation and treatment."

Thereafter, the Medical Board of California filed an administrative accusation against Dr. Lam pursuant to section 141, alleging that he had been disciplined by Wisconsin.

After an administrative hearing (at which Dr. Lam did not appear or introduce evidence), an administrative law judge recommended that Dr. Lam's California license be suspended for 90 days and that he pay $683 in investigative and enforcement costs pursuant to section 125.3. The Board adopted the recommendation.

Dr. Lam then petitioned the superior court pursuant to Code of Civil Procedure section 1094.5 for a writ of administrative mandamus, directing the Board to set aside its disciplinary action. He argued in large part that the Board lacked jurisdiction to discipline him under section 141 because section 141, the sole basis for the Board's action, had been "supplanted by section 2305," a more specific statute.

---

[6]See, e.g., *Garcia v. McCutchen, supra,* 16 Cal.4th at pages 476-478.

The trial court granted Dr. Lam's petition. In response to the Board's argument that Dr. Lam lacked standing because his suspension had expired, the court ruled that "this matter is not moot even though the term of the suspension expired during the pendency of these proceedings, since the petition was filed while the suspension was in effect." Addressing the merits, it concluded that the Board "exceeded its jurisdiction by imposing the suspension . . . on the basis of . . . section 141." It explained: "Section 2305 is a more specialized statute in that it applies specifically to medical licenses and requires a more specific finding than section 141. [¶] General principles of statutory interpretation hold that a specific statute relating to a particular subject will govern in respect to that subject as against a general provision, even though the general provision standing alone, would be broad enough to include the subject to which the more particular provision relates. See, *San Francisco Taxpayers Ass[n]. v. Board of Supervisors[, supra,]* 2 Cal.4th 571, 577. Accordingly, [the Board] could only impose discipline based on the Wisconsin action under section 2305, after making a finding that the Wisconsin action would be grounds for discipline in California. . . . The decision was based upon the wrong statute, and did not contain any findings that would support discipline under section 2305."

The Board then brought this petition for a writ of mandate directing the trial court to set aside its judgment.[7]

### DISCUSSION

### A. *Standard of Review*

Under Code of Civil Procedure section 1094.5, subdivision (b), the inquiry in an administrative mandamus proceeding is whether the agency "has proceeded . . . in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion."[8]

Here, the trial court determined that the Board exceeded its jurisdiction because its decision was based on the "wrong" statute.

---

[7]Review of a superior court's decision reviewing the Board's revocation, suspension, or restriction of a physician's medical license is done by way of a petition for extraordinary writ. (§ 2337; *Zabetian v. Medical Board* (2000) 80 Cal.App.4th 462, 465, fn. 2 [94 Cal.Rptr.2d 917].)

[8]*Usher v. County of Monterey* (1998) 65 Cal.App.4th 210, 215 [76 Cal.Rptr.2d 274].

"On review in this court, questions of statutory interpretation are questions of law warranting independent review."[9]

### B. *Dr. Lam's Beneficial Interest*

We address preliminarily the Board's assertion that Dr. Lam lacked standing to petition the trial court for writ relief because his suspension had expired during the pendency of the proceeding. This argument conflates standing and mootness.

Code of Civil Procedure section 1094.5, subdivision (g) provides, in relevant part, that "[w]here any final administrative order or decision is the subject of proceedings under this section, if the petition shall have been filed while the penalty imposed is in full force and effect, the determination shall not be considered to have become moot in cases where the penalty imposed by the administrative agency has been completed or complied with during the pendency of the proceedings."

The Board concedes that "[w]hen Lam's writ was filed, [his] suspension was still in effect, thus bringing the 'non-mootness' provision of Code [of] Civ[il] Proc[edure] section 1094.5[, subdivision] (g) into effect." But the Board argues that "although the controversy . . . may not be moot . . . , [Dr. Lam] nevertheless lacks a beneficial interest, for the court can do nothing for him; he is no longer aggrieved by [the Board]'s disciplinary order and can practice medicine in California without restriction or limitation of any kind."

■ We disagree. "Mootness has been described as ' "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." ' [Citations.]"[10] But Code of Civil Procedure section 1094.5, subdivision (g) restrains the invocation of mootness where the petitioner had standing at the time the petition was filed.

And Dr. Lam had standing at the time he filed his petition, as the Board concedes. The standing requirement for a party petitioning for a writ of

[9]*Usher v. County of Monterey, supra,* 65 Cal.App.4th at page 216; accord, *O'Connor v. State Teachers' Retirement System* (1996) 43 Cal.App.4th 1610, 1620-1621 [51 Cal.Rptr.2d 540]; *Borden v. Division of Medical Quality* (1994) 30 Cal.App.4th 874, 879 [35 Cal.Rptr.2d 905].

[10]*Arizonans for Official English v. Arizona* (1997) 520 U.S. 43, 68, footnote 22 [117 S.Ct. 1055, 1069, 137 L.Ed.2d 170, 193], quoting *United States Parole Comm'n v. Geraghty* (1980) 445 U.S. 388, 397 [100 S.Ct. 1202, 1209, 63 L.Ed.2d 479, 491]; see *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.* (2000) 528 U.S. 167, 189-193 [120 S.Ct. 693, 708-710, 145 L.Ed.2d 610, 632, 163 A.L.R. Fed. 749]; *id.* at pages 212-215 [120 S.Ct. at pp. 720-721, 145 L.Ed.2d at pp. 647-648] (dis. opn. of Scalia, J.).

mandate is that the petitioner be "beneficially interested."[11] This means that he or she must have " 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' [Citation.] This standard . . . is equivalent to the federal 'injury in fact' test, which requires a party to prove by a preponderance of the evidence that it has suffered 'an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." ' [Citation.]"[12] The suspension of Dr. Lam's medical license was an invasion of a legally protected interest.[13]

Accordingly, Dr. Lam had a beneficial interest, which existed at the commencement of the proceeding; the claimed loss of this legally beneficial interest during the course of the proceeding is an issue of mootness, which Code of Civil Procedure section 1094.5, subdivision (g), governs and deems not a basis for dismissal.[14]

Accordingly, the Board's contention that Dr. Lam lacks standing is rejected.

### C. The Interpretation of Sections 141 and 2305

The Board's principal argument is that the trial court erred in ruling that section 2305, as the "more specialized statute," governs over section 141, the more general statute.

### 1. The Statutes in Issue

Section 141 provides:

---

[11]See Code of Civil Procedure sections 1086 and 1069.

Code of Civil Procedure section 1086 states: "The writ must be issued, in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested."

Code of Civil Procedure section 1069 provides: "The application must be made on the verified petition of the party beneficially interested . . . ."

[12]*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 362 [87 Cal.Rptr.2d 654, 981 P.2d 499]; see also *Driving Sch. Assn. of Cal. v. San Mateo Union High Sch. Dist.* (1992) 11 Cal.App.4th 1513, 1517 [14 Cal.Rptr.2d 908] (a petitioner must be able to plead and prove that he will be, or has been, aggrieved by the administrative order).

[13]*Marek v. Board of Podiatric Medicine* (1993) 16 Cal.App.4th 1089, 1095 [20 Cal.Rptr.2d 474].

[14]The trial court also ruled that the assessment of costs against Dr. Lam gave rise to a beneficial interest, and Dr. Lam's interest in vacating the assessment of those costs continued after the expiration of his suspension. However, the Board argues that we cannot consider this because Dr. Lam "did not trouble to plead the costs awarded against him as a basis for a beneficial interest." Since Dr. Lam does not specifically respond to this point, and we have resolved this matter in accordance with Code of Civil Procedure section 1094.5, subdivision (g), we need not address the point here.

"(a) For any licensee holding a license issued by a board under the jurisdiction of the department [of Consumer Affairs], a disciplinary action taken by another state, by any agency of the federal government, or by another country for any act substantially related to the practice regulated by the California license, may be a ground for disciplinary action by the respective state licensing board. A certified copy of the record of the disciplinary action taken against the licensee by another state, an agency of the federal government, or another country shall be conclusive evidence of the events related therein.

"(b) Nothing in this section shall preclude a board from applying a specific statutory provision in the licensing act administered by that board that provides for discipline based upon a disciplinary action taken against the licensee by another state, an agency of the federal government, or another country."

Section 2305 provides: "The revocation, suspension, or other discipline, restriction, or limitation imposed by another state upon a license or certificate to practice medicine issued by that state, or the revocation, suspension, or restriction of the authority to practice medicine by any agency of the federal government, that would have been grounds for discipline in California of a licensee under this chapter, shall constitute grounds for disciplinary action for unprofessional conduct against the licensee in this state."

Thus, both sections 141 and 2305 authorize the Board to initiate a disciplinary action against a California-licensed physician based upon disciplinary action taken by another jurisdiction. However, section 2305 requires that the discipline, restriction, or limitation imposed by the other jurisdiction be "grounds for discipline in California," whereas there is no such limitation in section 141. On the other hand, section 141 is permissive, whereas section 2305 is mandatory: Section 141 provides that "a disciplinary action" taken by another jurisdiction "may" be a ground for disciplinary action by the Board; section 2305 states that the discipline, restriction, or limitation imposed by the other jurisdiction "shall" constitute grounds for discipline, where it is based on actions that "would have been grounds for discipline in California."[15] Finally, section 141 authorizes disciplinary action based on discipline taken by a foreign country, whereas section 2305 is silent on that point.

Accordingly, the more general statute—section 141—authorizes the Board to *consider* disciplinary action based on discipline taken by another state, a federal agency, or another country, whereas the more specific statute—

---

[15]Section 19 specifies that " '[s]hall' is mandatory and 'may' is permissive."

section 2305—*mandates* disciplinary action for unprofessional conduct, but only where the discipline, restriction, or limitation imposed by the other jurisdiction would be grounds for discipline in California. Section 141 is broader in scope, but overlaps with section 2305 in any case where the disciplinary action taken by the other state or federal agency is based on actions that would have been grounds for discipline in California.[16]

However, as the trial court observed here, there was no finding in the record that Wisconsin's restriction on Dr. Lam's license was based on what would be a ground for discipline in California. Thus, the question facing us is whether section 2305 should be construed to impliedly repeal section 141, where the record does not afford a basis for applying section 2305.

## 2. *The Origins of Sections 141 and 2305*

In considering whether section 2305 impliedly repeals section 141, we observe that section 141—the more general statute—was enacted *after* section 2305—the more specific statute.

Enacted in 1980,[17] section 2305 originally provided: "The revocation, suspension, or other discipline by another state of a license or certificate to practice medicine issued by the state to a licensee under this chapter shall constitute grounds for disciplinary action for unprofessional conduct against such licensee in this state."

A 1986 amendment added a clause that provided that "the revocation, suspension, or restriction of the authority to practice medicine by any agency of the federal government" would also constitute grounds for disciplinary action for unprofessional conduct.[18]

In 1994, the Legislature enacted section 141 in its present form.[19] At that time, aside from the fact that section 141 covered a broad array of licensees and section 2305 only dealt with medical licensees, the only material

---

[16]Although section 2305 refers to the "revocation, suspension, or other discipline, restriction, or limitation" imposed by another state, that clause does not make it broader than section 141's reference to "disciplinary action taken by another state." By limiting the out-of-state actions to circumstances that would be "grounds for discipline in California," section 2305 limits the out-of-state "revocation, suspension, or other discipline, restriction, or limitation" to disciplinary actions.

[17]Statutes 1980, chapter 1313, section 2, page 4481. We do not explore the more remote historical antecedents of section 2305. (See Historical Derivation, Deering's Ann. Bus. & Prof. Code (1998 ed.) foll. § 2305, p. 123.)

[18]Statutes 1986, chapter 220, section 9, page 1157; see *Marek v. Board of Podiatric Medicine, supra,* 16 Cal.App.4th at page 1093, footnote 1.

[19]Statutes 1994, chapter 1275, section 2, page 8153.

differences between sections 141 and 2305 were that section 141 was phrased permissively and section 2305 was phrased in mandatory terms, and that section 141 authorized disciplinary action on the basis of action by a foreign country, while section 2305 did not address that circumstance. Accordingly, as of January 1, 1995, when section 141 took effect,[20] both statutes applied, for the most part, to the same set of circumstances as far as medical licenses were concerned.

In 1995, however, the Legislature amended section 2305 into its present form and restricted its reach.[21] The Legislature made two material modifications in addition to various technical changes: First, it added "restriction or limitation" to the list of actions ("revocation, suspension, or other discipline") that could be imposed on an out-of-state license upon which discipline in California could be based; second, it amended the statute to provide that discipline could be imposed in California only where the out-of-state conduct "would have been grounds for discipline in California . . . ." According to the report of the Senate Committee on Business and Professions, this phrase was added because the California Medical Association was concerned that the proposed amendment to the statute, adding, as grounds for discipline, any restriction or limitation imposed by another state, was "drafted so broadly as to make subject to discipline in California, restrictions that are not truly disciplinary in nature (e.g., a physician who because of physical handicap has been restricted from practicing in some settings)."[22]

In sum, section 141 was enacted *after* section 2305 in a form that largely overlapped with section 2305. But section 2305 was amended a year later in a way that restricted its reach. Now there was some, but not total, overlap between the statutes.

### 3. *Applying the Rules of Statutory Construction*

#### a. *General Principles*

We now turn to whether section 2305—which was enacted before section 141 but restricted in scope a year after the latter's enactment—should be construed to impliedly repeal section 141. We again note that the record in this case does not suggest that both sections 141 and 2305 apply. In fact, the trial court specifically found that the Board's decision "did not contain any

---

[20]See California Constitution, article IV, section 8, subdivision (c)(1).

[21]Statutes 1995, chapter 708, section 9.

[22]Senate Committee on Business and Professions, Report on Senate Bill No. 609 (1995-1996 Reg. Sess.) April 3, 1995, page 5.

findings that would support discipline under section 2305." Accordingly, we need only decide whether section 141 should apply in the absence of findings that would support invocation of section 2305.

■ "The fundamental task of statutory construction is to 'ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute.' "[23]

We may also look to the canons of statutory construction to guide our quest for legislative intent. These include the duty to harmonize statutes on the same subject if possible,[24] the presumption against implied repeals,[25] and the rule that a specific statute prevails over a general one.[26]

But canons of statutory construction "are 'merely aids to ascertaining probable legislative intent.' [Citation.] No single canon of statutory construction is an infallible guide to correct interpretation in all circumstances."[27] "[The canons] are tools to assist in interpretation, not the formula that always determines it. A court must be careful lest invocation of a canon cause it to lose sight of its objective to ascertain the Legislature's intent."[28]

■ In recognition of the courts' constitutional role to construe, not write, statutes, " '[a]ll presumptions are against a repeal by implication.' "[29] "It is the duty of this court to harmonize statutes on the same subject [citations], giving effect to all parts of all statutes if possible [citation]."[30] "[W]e will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' "[31]

---

[23]*People v. Cruz* (1996) 13 Cal.4th 764, 774-775 [55 Cal.Rptr.2d 117, 919 P.2d 731].

[24]E.g., *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 50 [283 Cal.Rptr. 584, 812 P.2d 931].

[25]E.g., *Garcia v. McCutchen, supra,* 16 Cal.4th at page 476.

[26]*Garcia v. McCutchen, supra,* 16 Cal.4th at page 478.

[27]*Droeger v. Friedman, Sloan & Ross, supra,* 54 Cal.3d at page 50.

[28]*California Correctional Peace Officers Assn. v. Department of Corrections* (1999) 72 Cal.App.4th 1331, 1348 [85 Cal.Rptr.2d 797] (dis. opn. of Kolkey, J.); accord, *Droeger v. Friedman, Loan & Ross, supra,* 54 Cal.3d at page 50.

[29]*Garcia v. McCutchen, supra,* 16 Cal.4th at page 476.

[30]*Droeger v. Friedman, Sloan & Ross, supra,* 54 Cal.3d at page 52; accord, 2B Sutherland, Statutory Construction (6th ed. 2000) section 51.02, page 178.

[31]*Garcia v. McCutchen, supra,* 16 Cal.4th at page 477.

Significantly, whether the canon invoked is that the specific statute prevails over the general[32] or that the latest statutory expression prevails,[33] such canons share the requirement that the enforcement of one duly enacted statute at the expense of another on the same subject only applies when the two statutes cannot be reconciled.[34] Restraint of judicial trespass into the legislative province is no doubt the reason for the rule that a judicially determined repeal requires a repugnancy between the two statutes that prevents their concurrent operation—a restraint that has constitutional underpinnings premised on the separation of powers.[35]

With these principles in mind, we turn to the interpretation of the two statutes.

### b. *The Statutory Language*

" '[T]he statutory language . . . is the best indicator of legislative intent.' "[36] "Indeed, the most powerful safeguard for the courts' adherence to their constitutional role of construing, rather than writing, statutes is to rely on the statute's plain language."[37]

 The language of section 141 demonstrates that the Legislature did not overlook the existence of specific disciplinary statutes governing particular licensing boards, like section 2305, when it enacted section 141. Thus, it presumably did not intend to repeal them. Subdivision (b) of section 141 provides: "Nothing in this section shall preclude a board from applying a specific statutory provision in the licensing act administered by that board that provides for discipline based upon a disciplinary action taken against the licensee by another state, an agency of the federal government, or another country."

The permissive language of section 141, subdivision (a), its broad reach over all state licensing boards under the jurisdiction of the Department of

---

[32]*Garcia v. McCutchen, supra,* 16 Cal.4th at page 478.

[33]*Donlon v. Jewett* (1891) 88 Cal. 530 [26 P. 370].

[34]*Garcia v. McCutchen, supra,* 16 Cal.4th at page 478; *People v. Wheeler* (1992) 4 Cal.4th 284, 293 [14 Cal.Rptr.2d 418, 841 P.2d 938]; *Donlon v. Jewett, supra,* 88 Cal. at page 535.

[35]See Hamilton, The Federalist Papers, No. 78 (New Am. Libr. 1961) page 468 (the courts' power to give effect to one statute "in exclusion of the other" where two contradictory laws cannot be reconciled is "a matter of necessity").

[36]*Williams v. Superior Court* (1993) 5 Cal.4th 337, 350 [19 Cal.Rptr.2d 882, 852 P.2d 377], quoting *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826 [4 Cal.Rptr.2d 615, 823 P.2d 1216]; accord, *Hsu v. Abbara* (1995) 9 Cal.4th 863, 870 [39 Cal.Rptr.2d 824, 891 P.2d 804].

[37]*Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 46 [100 Cal.Rptr.2d 627]; see *Seaboard Acceptance Corp. v. Shay* (1931) 214 Cal. 361, 365 [5 P.2d 882] ("This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed. This court is limited to interpreting the statute, and such interpretation must be based on the language used.").

Consumer Affairs, and the express acknowledgement in subdivision (b) that section 141 was not meant to preclude the application of specific statutory provisions, suggest that section 141 was meant as a "catchall" statute that grants disciplinary authority to all licensing boards under the jurisdiction of the Department of Consumer Affairs.

Yet, despite section 141's express acknowledgement in subdivision (b) of the existence of more specific statutes, the Legislature did not expressly bar section 141's operation where such a specific statute exists. In contrast, another statute enacted as part of the same statutory scheme bars the operation of the general statute when a specific statutory provision exists. Section 125.3, which is part of the same chapter as section 141, authorizes the assessment of investigation and enforcement costs upon the "resolution of a disciplinary proceeding before any board within the department [of Consumer Affairs]."[38] But subdivision (j) of that statute states: "This section does not apply to any board if a specific statutory provision in that board's licensing act provides for recovery of costs in an administrative disciplinary proceeding."

The absence of such language in section 141, enacted two years after section 125.3, suggests a different intention than that found in section 125.3: " ' "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." ' "[39] Accordingly, the plain language of section 141, particularly when compared with the language of other statutes in the same chapter, demonstrates that it was intended to coexist with more specific statutes administered by licensing boards, not displace them or be displaced by them.

### c. Rule of Statutes in Pari Materia

Application of the relevant canons of statutory construction further bolster our conclusion that section 141 was meant to coexist with more specific statutes like section 2305.

---

[38]Section 125.3, subdivision (a).
[39]*Western States Newspapers, Inc. v. Gehringer* (1962) 203 Cal.App.2d 793, 799 [22 Cal.Rptr. 144].

As mentioned, "[i]t is the duty of this court to harmonize statutes on the same subject [citations], giving effect to all parts of all statutes if possible [citation]."[40]

██ "One 'elementary rule' of statutory construction is that statutes in pari materia—that is, statutes relating to the same subject matter—should be construed together. [Citation.] . . . The rule of in pari materia is a corollary of the principle that the goal of statutory interpretation is to determine legislative intent."[41]

This rule applies even when, as here, one statute deals generally with the subject and another deals with the subject with more specificity: " 'Even when one statute merely deals generally with a particular subject while the other legislates specially upon the same subject with greater detail and particularity, the two should be reconciled and construed so as to uphold both of them if it is reasonably possible to do so [citations].' "[42]

██ Sections 141 and 2305 can be harmonized so as to give effect to both. Read together, sections 141 and 2305 authorize discipline based upon disciplinary action taken by another jurisdiction, but section 2305 mandates disciplinary action for "unprofessional conduct" when the discipline taken by another state or federal agency "would have been grounds for discipline in California."

In short, section 2305 can be harmonized if it is considered an exception to, and not a replacement of, section 141: "Where the special statute is later it will be regarded as an exception to or qualification of the prior general one; and where the general act is later the special statute will be considered as remaining an exception to its terms unless it is repealed in general words or by necessary implication."[43] As shown in the next section, this is the proper and restrained manner of applying the canon that the specific statute prevails over the general one.

---

[40]*Droeger v. Friedman, Sloan & Ross, supra,* 54 Cal.3d at page 52; accord, 2B Sutherland, *Statutory Construction, supra,* section 51.02, page 178.

[41]*Droeger v. Friedman, Sloan & Ross, supra,* 54 Cal.3d at pages 50-51; *City of Huntington Beach v. Board of Administration* (1992) 4 Cal.4th 462, 468 [14 Cal.Rptr.2d 514, 841 P.2d 1034].

[42]*People v. Squier* (1993) 15 Cal.App.4th 235, 240-241 [18 Cal.Rptr.2d 536], quoting *Natural Resources Defense Council, Inc. v. Arcata Nat. Corp.* (1976) 59 Cal.App.3d 959, 965 [131 Cal.Rptr. 172]; *Pierce v. Riley* (1937) 21 Cal.App.2d 513, 518 [70 P.2d 206].

[43]*People v. Breyer* (1934) 139 Cal.App. 547, 550 [34 P.2d 1065]; accord, *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593]; 2B Sutherland Statutory Construction, *supra,* section 51.05 at page 259 and footnote 8.

### d. *The Rule That the Specific Statute Prevails over the General*

The trial court ruled that section 2305, as the "more specialized" statute, *replaced* section 141, citing *San Francisco Taxpayers Assn. v. Board of Supervisors, supra,* 2 Cal.4th at page 577. But that case stated that " '[i]t is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former.' "[44] Thus, that case did not rule that the more specific statute replaced the more general one; it ruled that the more specific statute simply served as an exception to the general one.

In *San Francisco Taxpayers Assn. v. Board of Supervisors, supra,* 2 Cal.4th 571, the California Supreme Court construed Proposition 4, which places a constitutional spending limit on appropriations by the state and local governments. The court sought to determine whether Proposition 4 limited a city's contributions to employee retirement funds that were established before the proposition took effect. Section 5 of the proposition places a spending limitation on appropriations to retirement funds, but section 9 provides that appropriations for debt service are not limited. Relying on the principle that "a general provision is controlled by one that is special," the state high court concluded that "[r]ead according to its plain meaning, section 5 [subjecting retirement funds to a limit] creates an exception to section 9(a) [not limiting appropriations for debt service] rather than a conflict."[45]

■ Other cases likewise conclude that a special provision should be treated as an exception to, but not as a replacement of, a general provision.[46] This rule fosters healthy relations between the judiciary and the legislature by minimizing implied repeals and the risk of judicial legislating.

Moreover, as both Code of Civil Procedure section 1859 and our state Supreme Court make clear, a specific statutory provision should prevail over the general provision only where the court must choose one over the other because the two cannot be reconciled.[47]

■ In this case, sections 141 and 2305 do not conflict in those cases where the out-of-state discipline is not a ground for discipline in California,

---

[44]*San Francisco Taxpayers Assn. v. Board of Supervisors, supra,* 2 Cal.4th at page 577, quoting *Rose v. State of California* (1942) 19 Cal.2d 713, 723-724 [123 P.2d 505].

[45]*San Francisco Taxpayers Assn. v. Board of Supervisors, supra,* 2 Cal.4th at page 577.

[46]E.g., *In re Williamson, supra,* 43 Cal.2d at page 654; *People v. Breyer, supra,* 139 Cal.App. at page 550; see *In re Rebecca H.* (1991) 227 Cal.App.3d 825, 835-836 [278 Cal.Rptr. 185]; 2B Sutherland Statutory Construction, *supra,* section 51.05, at page 259 and footnote 8.

[47]*People v. Wheeler, supra,* 4 Cal.4th at page 293 ("The principle that a specific statute prevails over a general one applies only when the two sections cannot be reconciled"); *Garcia*

or where the disciplinary action has been taken by a foreign country. In those circumstances, there is no conflict that requires the specific statute to prevail over the general. And in other circumstances where they do conflict—where the out-of-state discipline is a ground for discipline in California—section 2305 is best treated as a qualification (requiring discipline) to the general authorization granted under section 141.

Accordingly, properly applied, the canon that the specific statute prevails over the general requires that the former be treated as an exception to, not as a replacement for, the latter where both statutes are not so inconsistent that they cannot have concurrent operation. Otherwise, the canon would authorize an implied repeal of a general statute, without satisfying the stringent standards required for such drastic judicial action.

### e. *The Presumption Against Implied Repeals*

The presumption against implied repeals completes our analysis that section 2305 should be construed as an exception to, or qualification of, section 141, but not as an implicit repeal of it.

The "law shuns repeals by implication . . . ."[48] A repeal by implication "will occur only where the two acts are so inconsistent that there is no possibility of concurrent operation, or where the later provision gives undebatable evidence of an intent to supersede the earlier; the courts are bound to maintain the integrity of both statutes if they may stand together. [Citations.]"[49]

As the California Supreme Court put it in *Garcia v. McCutchen*,[50] "Absent an express declaration of legislative intent, we will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' "

The statutory acts here are not so repugnant and inconsistent that there is no possibility of concurrent operation. As noted, section 141 addresses areas not covered by section 2305: It allows discipline to be based on

---

*v. McCutchen, supra,* 16 Cal.4th at page 478; accord, *People v. Breyer, supra,* 139 Cal.App. at page 550; 2B Sutherland, Statutory Construction, *supra,* section 51.02, page 187.

[48]*Board of Supervisors v. Lonergan* (1980) 27 Cal.3d 855, 868 [167 Cal.Rptr. 820, 616 P.2d 802], certiorari denied (1981) 450 U.S. 918 [101 S.Ct. 1362, 67 L.Ed.2d 344]; accord, *Garcia v. McCutchen, supra,* 16 Cal.4th at pages 476-477; *Boyd v. Huntington, supra,* 215 Cal. at page 482.

[49]*Sacramento Newspaper Guild v. Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 54 [69 Cal.Rptr. 480].

[50]*Garcia v. McCutchen, supra,* 16 Cal.4th at page 477.

disciplinary action taken by another country or by another state or federal agency in those cases where the disciplinary action is not a ground for discipline in California—or where the precise nature of the disciplinary action cannot be discerned. Nor does section 141 provide "undebatable evidence of an intent to supersede" section 2305.[51] To the contrary, the statute's express language suggests an intent to permit coexistence.

### f. *Dr. Lam's Argument*

Dr. Lam's principal argument to the contrary is that "[t]o hold that the . . . Board may choose section 141 as an alternate path of discipline, would require this [c]ourt to read out of section 2305 the Legislature's clear intent that an out-of-state physician licensee can only be disciplined in California for an out-of-state disciplinary action that would have constituted 'grounds for disciplinary action for unprofessional conduct against the licensee in this state.' "

But section 2305 never states that out-of-state disciplinary action can *only* serve as a basis for discipline where the out-of-state action would have been grounds for discipline in California. Dr. Lam's contrary conclusion results from reviewing the language of section 2305 in isolation and by treating it as if it were the exclusive statute on the subject—in conflict with reality and in violation of the duty to reconcile statutes in pari materia. As we have shown, when we read sections 141 and 2305 together and in conjunction with the canons of statutory construction, we must conclude that the Legislature intended that the two statutes be construed to coexist to the extent possible. Admittedly, where the out-of-state discipline is grounds for disciplinary action in California, the plain language of section 2305 suggests that disciplinary action for "unprofessional conduct" is mandated. But that does not mean that the failure to satisfy the standards of section 2305 precludes any disciplinary action at all.

As the Board persuasively argues, Dr. Lam's construction would render without consequence out-of-state discipline where the basis for that discipline cannot be determined with precision, because, for instance, it was resolved by stipulation, and no charging documents had been made part of the record, as here. As one court has opined, limiting California discipline to circumstances in which "licensees admit culpability or where misconduct is proven in the foreign jurisdiction would make California a safe haven for medical practitioners who, in the face of charges of unprofessional conduct enter into consent decrees in other jurisdictions without making any admissions, leave that other jurisdiction, establish medical practices in California

---

[51]*Sacramento Newspaper Guild v. Sacramento County Bd. of Suprs., supra,* 263 Cal.App.2d at page 54.

and thus avoid review of their medical practices by any licensing agency."[52] Nothing suggests the Legislature intended this result.

#### 4. Conclusion

Section 2305 should not be construed to impliedly repeal the later-enacted section 141. A statute will not be construed to repeal acts on the same subject unless " 'there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' "[53]

The permissive language and broad scope of section 141 suggest that it was meant as a catchall statute that grants disciplinary authority to all licensing boards under the jurisdiction of the Department of Consumer Affairs. That it was meant to coexist with specific statutes is further demonstrated by the express acknowledgement in subdivision (b) that the statute does not preclude the application of specific statutes, and by the omission of any provision that would bar the operation of section 141 whenever a more specific statute exists. Of course, where the disciplinary action taken by another jurisdiction satisfies the additional requirement in section 2305 that the out-of-state discipline be "grounds for discipline in California," section 2035 mandates disciplinary action against the licensee for unprofessional conduct. But that only suggests that section 2305 prevails over section 141 when both apply. That prospect is not raised here because there were no findings in the record that the requirements of section 2305 were satisfied. The only issue here is whether section 141 applies when section 2305 does not. We conclude that it does, in light of the language of section 141, the duty to reconcile statutes in pari materia, and the presumption against implied repeals.

While we reverse the trial court's decision denying application of section 141, we remand so that the trial court can determine Dr. Lam's additional argument that the penalty imposed was improper, which he raised in the trial court but which it did not reach.

#### DISPOSITION

Let the peremptory writ of mandate issue, commanding the trial court to set aside its judgment and remanding the matter for consideration, consistent

---

[52]*Marek v. Board of Podiatric Medicine, supra,* 16 Cal.App.4th at page 1098 (construing a prior version of § 2305 when it did not require the out-of-state discipline to be a ground for discipline in California).

[53]*Garcia v. McCutchen, supra,* 16 Cal.4th at page 477; accord, *Boyd v. Huntington, supra,* 215 Cal. at page 482.

with this opinion, of Dr. Lam's contention that the Board's discipline was improper. Having served its purpose, the alternative writ is discharged. The Board shall recover its costs in this proceeding.[54]

Sims, Acting P. J., and Raye, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied August 8, 2001.

---

[54]California Rules of Court, rule 56.4.