Filed 1/12/22  Atkinson Construction v. Occupational Safety and Health Appeals Bd. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ATKINSON CONSTRUCTION, LP,<br><br>       Plaintiff and Appellant,<br><br>   v.<br><br>OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD,<br><br>       Defendant and Respondent;<br><br>DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF OCCUPATIONAL SAFETY AND HEALTH,<br><br>       Real Party in Interest and Respondent. | C091705<br><br>(Super. Ct. No. 34-2017-80002611-CU-WM-GDS) |

This appeal arises from a workplace safety citation issued by the Department of Industrial Relations, Division of Occupational Safety and Health (the Division) to plaintiff Atkinson Construction LP (plaintiff).  In June 2014, while plaintiff's employees

1

were erecting "falsework" for a new freeway bridge, an accident occurred, which seriously injured one of plaintiff's employees.[1]  Specifically, a forklift attempting to position a long steel beam atop two vertical falsework structures, known as "bents," accidentally hit another beam, causing that beam and another to overturn and fall off the bents.  As the beams collapsed, an employee standing on one of the bents fell nearly 30 feet to the ground.  After an investigation, the Division cited plaintiff for violating a construction safety order that requires beams to be "braced laterally and progressively" to prevent overturning.  (Cal. Code Regs., tit. 8, § 1709, subd. (b)(1).)[2]

Plaintiff appealed the citation, but the Occupational Safety and Health Appeals Board (the Board) denied the appeal.  Plaintiff then filed a petition for a writ of administrative mandate in the superior court (Code Civ. Proc., § 1094.5), which also was denied.  Plaintiff appeals the denial of its writ petition, arguing that (1) the cited safety order does not apply because another, more specific, safety order governs falsework operations; and that (2) plaintiff complied with the more specific safety order.  We disagree and shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On June 18, 2014, plaintiff was erecting falsework for a freeway bridge it was constructing near the I-405/I-605 interchange in Seal Beach, California.[3]  The falsework plan for the overcrossing required plaintiff to place, horizontally, three 135-foot-long

---

[1]    In lay terms, falsework is a temporary framework used to support a structure that is not yet capable of supporting its own weight.  (Cal. Code Regs., tit. 8, § 1504, subd. (a); Merriam-Webster's Online Dict. (2009) <https://www.merriam-webster.com/dictionary/falsework> [as of Jan. 12, 2022], archived at <https://perma.cc/Y5BB-GP5Y>.)

[2]    Undesignated section references are to the California Code of Regulations, title 8.

[3]    Because plaintiff has not challenged the Board's factual findings, we accept them as true.  (*Von Durjais v. Board of Trustees* (1978) 83 Cal.App.3d 681, 687.)

2

steel beams, each weighing approximately 60,000 pounds, a few inches apart on top of two vertical 27-foot-high bents, one located on each side of the freeway. The process involved first using a crane to lift the beams onto the bents, and then using a forklift to push the beams into their final position so the beams could be banded together using metal straps. Wood blocking was to be installed between the beams for spacing and (according to some witnesses) stability. Because the beams were to be positioned so close together, the blocking was installed on the ground before the beams were lifted onto the bents.

At the time of the accident, two of the horizontal beams already had been placed and positioned on the bents. One of the beams (beam 1) possibly was attached to the bents with C-clamps, but the other (beam 2) was simply resting on the bents, untethered. Construction worker Ramon Torres (Torres) was standing on one of the bents to help the crane operator place the third beam (beam 3) alongside the other two. As beam 3 was lowered onto the bents, but while still suspended by the crane, a worker used a forklift to nudge beam 3 closer to beam 2. While moving the beam, the forklift operator accidentally pushed beam 3 into beam 2 (or its blocking), causing beam 2 to overturn and fall into beam 1. Both beams 1 and 2 then rolled off the bents and fell onto the freeway lanes below. As the beams fell, the bents moved, causing Torres to fall down 27 feet. Torres suffered serious physical injuries from the fall.

The Division issued a citation to plaintiff, alleging a violation of section 1709, subdivision (b)(1), which requires trusses and beams to be "braced laterally and progressively during construction to prevent buckling or overturning." Plaintiff appealed the citation, arguing, among other things, that there was no violation because beams 1 and 2 were braced laterally and progressively during construction by means of the wood blocking placed between them. The matter proceeded to an evidentiary hearing before an administrative law judge who upheld the citation.

3

Plaintiff filed a petition for reconsideration, asserting that the Division cited the wrong safety order. In May 2017, the Board issued its decision after reconsideration (Decision) denying plaintiff's appeal.

In June 2017, plaintiff filed a petition for writ of administrative mandate (writ petition) challenging the Board's Decision. The trial court denied the writ petition. Judgment was entered on January 8, 2020, and this appeal timely followed.

## DISCUSSION

### I

### *Standard of Review*

" 'Our function on appeal is the same as that of the trial court in ruling on the petition for the writ. We must determine whether based on the entire record the Board's decision is supported by substantial evidence and whether it is reasonable. [Citations.] Where the decision involves the interpretation and application of existing regulations, we must determine whether the administrative agency applied the proper legal standard. [Citation.]' " (*Rick's Electric, Inc. v. Occupational Safety & Health Appeals Bd.* (2000) 80 Cal.App.4th 1023, 1033.) The interpretation of a regulation, like the interpretation of a statute, is a question of law. (*Ibid*.) While the Board's administrative construction is entitled to consideration and respect, we exercise our independent judgment to decide if the agency's interpretation was correct. (*Department of Industrial Relations v. Occupational Safety & Health Appeals Bd.* (2018) 26 Cal.App.5th 93, 100 (*Department of Industrial Relations*); *United Assn. Local Union 246, AFL-CIO v. Occupational Safety & Health Appeals Bd.* (2011) 199 Cal.App.4th 273, 281; see also *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7-8, 11-13.)

### II

### *The Cited Safety Order*

The Division cited plaintiff for failing to ensure that the massive steel beams spanning the 405 freeway were braced "laterally and progressively . . . to prevent . . .

overturning," as required by section 1709, subdivision (b)(1). Plaintiff contends on appeal that the Board improperly interpreted and applied the cited safety order to the facts of this case. We find no error.

We begin with the language of the cited safety order. Under well-established rules of statutory construction, when interpreting an administrative regulation our fundamental task is to ascertain and effectuate the intent of the agency issuing the regulation. (*Department of Industrial Relations, supra*, 26 Cal.App.5th at pp. 100-101.) In determining the issuing agency's intent, we first examine the language of the regulation itself, giving the words their usual, ordinary, and common sense meaning based upon the language used and the evident purpose for which the law was adopted. (*Id.* at p. 101; *Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 164.) When the language is clear and unambiguous, " 'there is no need for construction, and *courts should not indulge in it*.' " (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 800, original italics; accord, *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.) "Only when the language of a statute [or regulation] is susceptible to more than one reasonable construction is it appropriate to turn to extrinsic aids, including the legislative history of the measure, to ascertain its meaning. [Citation.]" (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1055.)

Here, plaintiff invites us to consider the regulatory history of section 1709, subdivision (b)(1), but we have no basis for doing so. The language clearly states that "[t]russes and beams shall be braced laterally and progressively during construction to prevent buckling or overturning." (§ 1709, subd. (b)(1).) There is no ambiguity in the text to justify an inquiry into its regulatory history.[4]

---

[4]  The trial court refused to consider this issue because plaintiff did not timely raise it in its opening brief below. Plaintiff has failed to show that this was an abuse of

Despite the safety order's plain language, plaintiff argues that section 1709 does not apply to falsework operations. In short, plaintiff contends that falsework is a "separate and distinct" type of construction, with its own specific safety order (section 1717), and therefore the absence of any reference to falsework in section 1709 necessarily implies that it applies only to nonfalsework construction. We are unpersuaded.

As the trial court recognized, merely because section 1717 deals specifically with falsework does not mean that it is the *only* safety order that can apply to falsework operations. Prior Board decisions establish that more than one safety order may apply to a particular set of facts, even when the construction involves falsework. (*Tutor-Saliba-Perini* (Cal/OSHA, Apr. 24, 2003, No. 97-R6D2-3209 et al.) 2003 WL 21016056, pp. *8-10, decision after reconsideration [applying section 3328, subdivision (f) to falsework]; *Webcor Construction L.P. dba Webcor Builders* (Cal/OSHA, Jan. 20, 2017, No. 317176766) 2017 WL 667192, pp. *2-3, denial of petition for reconsideration [applying section 1637, subdivision (c) to falsework]; § 1637, subd. (c) [specifically referring to falsework]; see also *Cabrillo Economic Development Corp*. (Cal/OSHA, Oct. 16, 2014, No. 11-R4D3-3185 et al.) 2014 WL 6491674, p. *3, decision after reconsideration and remand [not uncommon for more than one safety order to apply] (*Cabrillo*).)[5]

Here, section 1709 is part of the specific industry safety orders promulgated for the construction industry. (*Skyline Homes, Inc. v. Occupational Safety & Health Appeals Bd.* (1981) 120 Cal.App.3d 663, 669; § 1502 et seq.) Such construction safety orders

discretion. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.)

[5]    Although the Board's decisions are not binding, courts routinely cite such decisions to show the Board's interpretations of relevant safety regulations. (See *Elsner v. Uveges* (2004) 34 Cal.4th 915, 930; *Rick's Electric, Inc. v. Occupational Safety & Health Appeals Bd., supra*, 80 Cal.App.4th at p. 1034; see also *Nolte Sheet Metal, Inc. v. Occupational Safety & Health Appeals Bd.* (2020) 44 Cal.App.5th 437, 446, fn. 15.)

establish minimum safety standards that apply to any employment "in connection with the construction, alteration, painting, repairing, construction maintenance, renovation, removal, or wrecking of any fixed structure or its parts." (§ 1502, subd. (a).) Plaintiff was engaged in construction of a freeway bridge, which is a fixed structure. (§ 1504 [defining "structure"]; *Skyline Homes, Inc., supra*, 120 Cal.App.3d at p. 670 [defining " 'fixed' "]; *Stacy & Witbeck, Inc*. (Cal/OSHA, May 12, 2011, No. 05-R1D1-1142) 2011 WL 2881526, p. *4, decision after reconsideration [same].) Thus, plaintiff's falsework operations were covered by the construction safety orders, including section 1709.

By its plain terms, section 1709, subdivision (b)(1) specifically applies to any construction involving trusses or beams. The safety order includes no express exception for falsework construction, and we cannot conceive of any good reason to imply one. Safety orders are required to be given a liberal interpretation to help achieve a safe and healthy working environment. (See *Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303, 313; *Department of Industrial Relations, supra*, 26 Cal.App.5th at pp. 106-107; *Pinnacle Telecommunications, Inc*. (Cal/OSHA, Sept. 22, 2017, No. 317202901) 2017 WL 4464455, p. *4, decision after reconsideration.) Applying that rule of liberal construction, and giving appropriate deference to the Board's interpretation, we cannot say the Board erred in concluding that the cited safety order applied to plaintiff's falsework operations.

Plaintiff argues that when a specific provision relating to a particular subject is enacted, the specific provision controls and takes priority over a general provision, the former being treated as an exception to the latter. However, this principle applies only when the two acts are in conflict and cannot be reconciled. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478 (*Garcia*); accord, *Medical Board v. Superior Court* (2001) 88 Cal.App.4th 1001, 1004-1005, 1014; *Cabrillo, supra*, 2014 WL 6491674, p. *3]; *Coast Waste Management, Inc*. (Cal/OSHA, Oct. 7, 2016, No. 11-R3D2-2385 et al.) 2016 WL 6093245, p. *5, decision after reconsideration.) "If we can reasonably harmonize '[t]wo

7

[acts] dealing with the same subject,' then we must give 'concurrent effect' to both, 'even though one is specific and the other general. [Citations.]' [Citation.]" (*Garcia, supra*, at p. 478.)

Here, we perceive no irreconcilable conflict between the two safety orders.[6] Even if there is some overlap between them, the hazards addressed by the orders are not identical. As plaintiff concedes, section 1717 requires falsework to be "designed, erected, supported, braced and maintained so as to assure its ability to safely withstand all *intended* loads." (§ 1717, italics added.) In contrast, section 1709, subdivision (b)(1) requires lateral and progressive bracing during construction to prevent trusses and beams from "buckling or overturning," without regard to whether the force was intended or not. (§ 1709, subd. (b)(1).)

The two safety orders do not conflict merely because one imposes stricter requirements than the other. This was not a situation where one safety order mandates conduct which the other expressly forbids. It was perfectly possible for plaintiff to comply with both safety orders simultaneously, by ensuring that all aspects of the falsework was designed, erected, supported, braced, and maintained to withstand all intended loads, and that any beams were braced laterally and progressively during construction to prevent buckling and overturning. (See *Tutor-Saliba-Perini, supra*, 2003 WL 21016056, p. *10 [finding no inconsistency between general safety order and falsework safety order]; *Vernon Melvin Antonsen & Colleen K. Antonsen, Individually and dba Antonsen Construction* (Cal/OSHA, July 19, 2012, No. 06-R2D3-1272 et al.) 2012 WL 3306604, p. *4, decision after reconsideration [no conflict by virtue of fact one

---

**6** We decline to consider plaintiff's argument about an alleged conflict between other subdivisions of sections 1709 and 1717. To paraphrase the trial court: The issue here is whether there is a conflict between the cited safety order (section 1709, subdivision (b)(1)) and the falsework safety order (section 1717), not whether there is a conflict involving various other subdivisions that have no application to this case.

safety order allows unprotected work at higher elevation than another] (*Antonsen*); see also *Cabrillo, supra*, 2014 WL 6491674, pp. *3-4 [finding no inconsistency between safety orders].) We disagree that applying section 1709 to falsework renders section 1717's bracing requirement superfluous.

Plaintiff also argues, in the alternative, that when two different safety orders apply, the Division is required to cite the more specific one. However, the fact that one safety order may be more specific or more particular to a given set of facts is immaterial unless there is an actual conflict between them. (*Garcia, supra*, 16 Cal.4th at p. 478; *Cabrillo, supra*, 2014 WL 6491674, pp. *3-4; *EZ-Mix, Inc.* (Cal/OSHA, Nov. 26, 2013, No. 08-R4D3-1898) 2013 WL 6833200, pp. *4-5, decision after reconsideration; *Antonsen, supra*, 2012 WL 3306604, p. *4; *Bostrom-Bergen Metal Products* (Cal/OSHA, Jan. 10, 2003, No. 00-R2D5-1012) 2003 WL 202422, p. *5, decision after reconsideration.) As discussed above, we find no conflict between the two safety orders at issue in this case.

In addition, even if there was a conflict, we are not convinced that section 1717, subdivision (a)(1) is the more specific safety order. Although section 1717 applies explicitly to falsework, the cited safety order (section 1709, subdivision (b)(1)) more closely addresses the alleged violative condition, namely, the failure to laterally brace beams to prevent overturning. Under the facts of this case, section 1709, subdivision (b)(1) was the more specific safety order.

For these reasons, we conclude the trial court did not err in denying the writ petition.

9

## DISPOSITION

The judgment is affirmed.  Defendant and real party in interest shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


          KRAUSE        , J.


We concur:


      RAYE           , P. J.


      MAURO        , J.